LOVELL *et al.* v. McCAUGHEY *et al.*

An action will not lie to rescind for fraud a contract under which part of the consideration has been received, unless the plaintiff has restored or

offers to restore the consideration he has received, as required by Comp. Laws, Sec. 3591.

(Opinion Filed, April 18, 1896.)

Appeal from circuit court, Beadle county. Hon. A. W. CAMPBELL, Judge.

Action to rescind a contract. Plaintiffs had judgment, and defendants appeal. Reversed.

The facts are stated in the opinion.

*J. M. Davis* and *R. H. Brown,* for appellants.

This action should not be maintained to rescind a contract for fraud, while the complaint fails to allege or proof to show that the consideration was returned or offered to be returned before suit was brought. Burge v. Ry. Co., 32 Iowa 101; Wells Replevin 187; Nicholas v. Michael, 23 N. Y. 264; Wilber v. Flood, 16 Mich. 40; Manning v. Abee, 11 Allen 52.

*T. H. Null,* for respondents.

FULLER, J. This action, based upon alleged fraudulent representations, was to rescind a contract for the sale or exchange of Huron real property for certain suburban lots in Sioux City, Iowa. The court before whom the case was tried without a jury found upon all the issues for plaintiffs against the defendants, and from a judgment directing the defendants to reconvey said Huron property to plaintiffs, and to account for the rents and profits thereof, the defendants appeal. Respondent Albert Lovell exchanged a house and lot in Huron for 20 unimproved lots situated in Lynn, a suburb of Sioux City. His claim is that he was by appellants induced to convey and deliver up the possession of his property by means of the following false and fraudulent representations and pretensions: That the Sioux City property belonged to appellants and was reasonably worth $400 per lot; that by paying an incumbrance of $225 per lot, or $4,500, according to the terms of his agreement, he could and would receive a perfect title to said property; and that the same was not subject to overflow from the Floyd river.

It appears from the evidence that the respondent solicited the exchange of property after having frequently visited and carefully examined the Lynn property claimed by appellants, and consisting of a list of 90 lots, from which he selected, as being the most desirable, the 20 described in his contract or bond for a deed.  Upon several occasions immediately prior to the transaction complained of he had talked with numerous disinterested persons concerning the value of the lots, the desirability of the location, and the ensuing prospects of the city, so that he was fully advised of the location, character and current price of the property before he called upon appellants, and entered into negotiations therefor.  Pursuant to the contract entered into on the 24th day of January, 1891, respondents conveyed to appellants their Huron property, free from incumbrance, and took in exchange therefor the 20 lots above mentioned, upon the following conditions:  "Subject to an indebtedness of $225 upon each and every lot, which indebtedness said Albert Lovell hereby agrees to and does assume as part of consideration of this agreement, and hereby agrees to pay one-third of said indebtedness on each of said lots to said McCaughey and Brown, in cash, on or before (at option of said Lovell) August 1, 1891, one-third in cash by August 1, 1892, balance by August 1, 1893, with 8 per cent interest on deferred payments until fully paid.  That on payments of $225 and interest due thereon, as above, first parties will make warranty deed to any of said lots as second party may require to be deeded."  Immediately appellants under their deed and respondents under their contract went into peaceable, continuous and actual possession of their respective properties, and have so remained without interruption.

At the date of the contract between the parties to this suit appellants were in possession of the list of the lots from which respondents made their selection, under a contract of purchase bearing date July 29, 1890, executed and delivered to them by the Sioux City Valley Land Company, in which said company

agreed, upon payment of $225 per lot, to convey by warranty deed, free from incumbrance any or all of said lots to appellants, their heirs or assigns when called upon so to do at any time prior to August 1, 1891. Concerning lots for which payment had not been made as above specified on the 1st day of August, 1891, appellants, at their election, on said day had the right, under this contract, to pay in cash one-fifth of the aggregate amount of the purchase price at $225 per lot, and to execute in settlement for the balance their promissory notes secured by a mortgage upon the premises, payable in three equal annual installments, with interest at 7 per cent per annum, and at any time, and as often as $225 was paid upon said indebtedness, the mortgage was to be released from said lot or lots, as appellants might designate; and a warranty deed therefor, conveying a title free from reasonable doubt, was to be executed by the grantor to appellants, their heirs or assigns. This contract contains other conditions optional to appellants, with reference to the 90 lots, which it will not be necessary to notice. While respondents never made nor attempted to make the one-third, or $1,500, payment falling due August 1, 1891, they did during the life of the contract, pay $225, for which appellants caused to be executed and delivered to respondents, according to the terms of their contract and at respondents' request a warranty deed to one of the lots, by which they obtained a title absolutely clear and free from reasonable doubt. Mr. Lovell testified that Mr. McCaughey told him that the valley in which the lots are situated was never known to overflow. Mr. McCaughey, who denies this specifically, and swears that the subject was never mentioned, is fully corroborated by Mr. Brown, who was present at the time, and heard all that was said. Moreover, it appears from the undisputed testimony of disinterested witnesses based upon actual observation and personal knowledge, that the valley had never been known to overflow prior to the execution of the contract sought to be rescinded. The undisputed evidence shows that the lots at the time of the

transfer were each reasonably worth from four to five hundred dollars. Although appellants' contract with the land company was of record, and they both specifically stated upon the witness stand that they exhibited and fully explained the terms and conditions thereof to respondent Lovell, and entered into the contract in suit with reference thereto, Mr. Lovell testified that they claimed to be the owners of all the property described therein. Whether the court's findings of fact are sufficiently sustained by the evidence, it is not, under the view we shall take, necessary to determine.

During the month of August, 1891, and after the expiration of both contracts, Mr. Lovell, while in default, applied for additional time within which to perform, and through appellant Brown, acting as the attorney for the land company, obtained from said company, without consideration, an extension of his contract for a term of one year. Prior to that time he had erected residences upon two of the lots, in which he still had an equity, and had built and was in actual possession of a dwelling house situated upon the lot, for which he had obtained, under the contract sought to be rescinded, a perfect title; and counsel for appellants contend that, after years have elapsed since discovering the alleged fraud, respondents cannot maintain an action to rescind the contract without offering to restore the consideration therefor. Under the statute of this state rescission of a contract not effected by consent is allowable only when the party rescinding has with reasonable diligence complied with the following rules: "(1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and (2) he must restore to the other party everything of value which he has received from him under the contract; or must offer-to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so." Comp. Laws, § 3591. No claim is made that respondents ever restored or offered to

restore to appellants either the equity in the property transferred by the contract or the title to the unincumbered lot which appellants, in compliance with their obligation, caused to be conveyed to respondents by warranty deed. Assuming, but not conceding, the existence of fraud in the transaction, and that respondents proceeded with reasonable promptness, after the discovery thereof, to rescind the contract, they are not entitled to a restoration of the Huron property, and at the same time to withhold the right, title and interest in and to the Sioux City lots received by them from and through the partial performance of the contract upon the part of appellants. Independently of the statutory provision above cited, the rule that a party who has derived an advantage or thing of value from a partial performance cannot usually rescind a contract without placing or offering to place the other party in *statu quo* by restoring or offering to restore the consideration received, is too well established to justify the citation of supporting authority. Under the circumstances disclosed by the record, respondents cannot retain the property acquired by the contract, and by rescission obtain a reconveyance of all the property transferred in part consideration therefor. The judgment appealed from is reversed.