The ESTATE OF Dorothy Sheffield
THOMAS, Plaintiff and
Appellee,

v.

Keith L. SHEFFIELD, Defendant
and Appellant.

No. 18247.

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1993.

Decided Feb. 9, 1994.

Susan N. Steele, Steele and Steele, P.C., Plankinton, for plaintiff and appellee.

James D. Taylor, Taylor & Miskimins, Mitchell, for defendant and appellant.

SABERS, Justice.

This appeal arises from a dispute over an agreement concerning real property distributed in a divorce action. We affirm.

## FACTS

Dorothy Sheffield Thomas (Thomas) and Keith Sheffield (Sheffield) were divorced on August 29, 1984. Under the Final Decree of Divorce, Sheffield managed the farm real estate which he and Thomas held as tenants in common. The Final Decree also provided that, after four years, either party could move to sell the farm real estate. Sheffield moved for an Order directing a Sheriff's Sale of the real estate on November 11, 1988,

which was granted. It was sold to Thomas on December 29, 1988.

Disputes arose concerning the accountings which Sheffield was required to provide as well as the distribution of the proceeds from the sale of the real estate. A hearing was scheduled for April 24, 1990, to settle these matters. The hearing was canceled however, based upon representations by the attorneys that the parties reached an agreement.

On April 24, 1990, Sheffield and Thomas signed the Agreement which is the subject of this dispute. As a result of the Agreement, Sheffield received partial payment from Thomas of $27,727.07 from the proceeds of the sale of the real estate. Believing that the Agreement was in place, Thomas arranged for financing and to carry out the terms of the Agreement. However, on June 21, 1990, the date set for closing, Sheffield informed Thomas that he did not plan to go forward with the closing. Sheffield has not returned or offered to return the $27,727.07.

Thomas filed a complaint against Sheffield on June 28, 1990, seeking specific performance of the Agreement and damages. Thomas passed away on July 20, 1990, and her Estate was substituted as Plaintiff. Sheffield filed a Motion to Set Aside the Settlement Agreement under SDCL 15–6–60(b)(1) and (6). The civil action and the divorce action were consolidated and on May 10, 1991, an Order approving the Agreement was entered. Sheffield's Motion to Set Aside the Settlement Agreement was denied and Partial Summary Judgment for Specific Performance was granted.

Sheffield appealed. The Supreme Court dismissed the appeal because the Order Approving Settlement Agreement and Partial Summary Judgment for Specific Performance were not final orders from which appeals as a matter of right may be taken. On May 13, 1992, a hearing was held in circuit court on damages. The court entered its Judgment and Order on damages for Thomas on December 2, 1992. Sheffield appeals.

1. **Whether the trial court erred in refusing to set aside the Agreement and in entering its Order approving the Agreement.**

Sheffield argues that the Agreement is unenforceable because he sought to have the Agreement set aside before it had been submitted to, and approved by, the court.[1] In support of his position, Sheffield quotes 73 Am.Jur.2d *Stipulations* § 2 (1974). Sheffield failed, however, to quote the passage in its entirety and deleted relevant language.

It has been said that *unless it is clear from the record that the parties assented,* there is no stipulation, and it is provided in many jurisdictions, by rule of court or by statute, that a private agreement or consent between the parties or their attorneys, in respect to the proceedings in a cause, will not be enforced by the court unless it is evidenced by a writing subscribed by the party against whom it is alleged or made, and filed by the clerk or entered upon the minutes of the court.... Thus, it is said that the principal reason for denying effect to informal stipulations is the uncertain character of such stipulations, which is capable of producing controversies and consequent impediments to the business of the court. (Emphasis added.)

Unlike the agreements to which 73 Am. Jur.2d § 2 applies, this Agreement was not of an "uncertain character." Rather, it is "clear from the record that the parties assented" to the Agreement. Sheffield was represented by an attorney when he signed the Agreement. While he appears to have alleged in his complaint mistake and undue influence, he failed to support these allegations at the motions hearing and has not raised or supported them in his brief on appeal. Sheffield did not file a Reply Brief. *Cf. Pekarek v. Wilking,* 380 N.W.2d 161 (Minn.Ct.App.1986) (discussing appellant's claim that the stipulation should be vacated because she did not understand its terms,

1. Under South Dakota law, an agreement modifying a child support obligation must be in writing and have the approval of the court, and "this court does not look favorably upon agreements to modify child support that have not received the court's approval." *Vander Woude v. Vander Woude,* 501 N.W.2d 361, 364 (S.D.1993). However, this Agreement is not an agreement modifying a child support obligation.

she was improperly encouraged by the trial court to sign, and her attorney was incompetent).

In *Pekarek v. Wilking*, an ex-wife moved to vacate a stipulation entered into between herself and her ex-husband. In refusing to vacate the stipulation, the Minnesota Court of Appeals stated:

> Courts favor stipulations, particularly in dissolution cases, as a means of simplifying and expediting litigation. Stipulations are treated as binding contracts. They cannot be repudiated or withdrawn by one party without the consent of the other party except by leave of the court for cause shown. Courts may set aside stipulations for fraud, duress or mistake. Upon appeal a trial court's determination whether or not to vacate a stipulation will not be disturbed in the absence of an abuse of discretion. For a stipulation to stand, a "meeting of minds on the essential terms of the agreement" must have occurred. If the agreement was improvidently made, it may be vacated.

380 N.W.2d at 163 (citations omitted). We agree. Sheffield cannot "repudiate the Agreement" and "revoke his acquiescence" absent cause or the consent of Thomas. Sheffield has not shown fraud, duress or mistake. It appears he simply "changed his mind." In fact, Sheffield accepted $27,727.07 in partial payment from Thomas, demonstrating his acquiescence in the Agreement. *Pekarek*, 380 N.W.2d at 163–64.

Sheffield signed the Agreement voluntarily and with the assistance of counsel. His consent is evidenced by his signature and acceptance of partial payment. *See generally Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D.1985) ("The construction given by the parties themselves to the contract as shown by their acts, if reasonable, will be accorded great weight and usually will be adopted by the court."). While it was within the trial court's discretion to reject the Agreement, the court approved the Agreement and entered an Order Approving Settlement Agreement. *See Radigan v. Radigan*, 465 N.W.2d 483, 484–85 (S.D.1991). Sheffield failed to demonstrate that the trial court abused its discretion. *Id.* (Stating that an agreement

between parties on property, alimony, and child support is one relevant factor for the court's consideration, but such an agreement does not control the court's exercise of its discretion in light of all relevant factors).

2. **Whether Thomas was entitled to summary judgment as a matter of law.**

The standards under which a summary judgment is reviewed are well established. "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper."

*Lamp v. First Nat'l Bank*, 496 N.W.2d 581, 583 (S.D.1993) (quoting *Waddell v. Dewey Cnty. Bank*, 471 N.W.2d 591, 593 (S.D.1991) (citations omitted)).

"Courts encourage settlements in divorce actions. Contractual stipulations in divorce proceedings are governed by the law of contracts. The interpretation of a contract is a matter of law for a court to decide." *Seablom v. Seablom*, 348 N.W.2d 920, 924 (N.D. 1984) (citations omitted). "When the language of a provision is clear, no other evidence is to be considered." *Id.* (citation omitted).

■ Having determined that the trial court did not abuse its discretion in refusing to set aside the Agreement and entering its Order approving the Agreement, we hold that summary judgment was proper. Although Sheffield alleged at the Motions Hearing that Thomas could not perform, mere allegations are not sufficient to pre-

clude summary judgment. *Waddell,* 471 N.W.2d at 594. Sheffield has failed to allege a material issue of fact sufficient to preclude summary judgment. We affirm.

### 3. Whether Thomas is entitled to Attorney's Fees.

■ The Estate filed a Motion for Appellate Attorney's Fees which is supported by an itemized statement of the legal services rendered as required by *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985). According to the Affidavit in Support of the Motion, attorney fees and taxes of $2,256.80 were necessarily incurred in this action.

"We have considered the property owned by each party, their relative incomes, the liquidity of their assets and whether either party unreasonably increased the time spent on the case." *Vander Pol v. Vander Pol,* 484 N.W.2d 522, 526 (S.D.1992) (citations omitted). This was an action to compel specific performance of an Agreement pursuant to a divorce action, which was consolidated with the divorce action by stipulation of the parties. ("It is stipulated between the parties to this action ... that this action [ ] be consolidated in its entirety with the divorce action [ ] pursuant to SDCL 15–6–42(a) inasmuch as both actions involve common issues and questions of law and consolidation may avoid unnecessary costs or delay.") We find that it is sufficiently intertwined with the divorce action to award attorney fees and taxes in the amount of $2,256.80 from Sheffield. *See generally Nimmer v. Nimmer,* 203 Neb. 503, 279 N.W.2d 156, 158 (1979) ("The authority of the court to allow attorney's fees continues until the subject matter of the divorce suit is finally settled and determined.").[2]

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs with a writing.

HENDERSON, Justice (concurring).

It is important to recognize that this case was a consolidated action of two civil files in Jerauld County, civil files no. 83–16 (a file opened in 1983) and 90–18 (a file opened in 1990). The first is a divorce action and the second is an action of specific performance of an Agreement. The Agreement arises from an adjudication of non-executing provisions in the Decree of Divorce. I would, in all matters, affirm the trial court.

The Agreement was dated April 24, 1990.[*] Sheffield wants to repudiate the Agreement. Not once does his brief mention that on May 15, 1990, he received $27,727.07 from Thomas. This was partial performance on her part. Sheffield received the benefit of his bargain. On June 21, 1990, Sheffield not only repudiated the Agreement but failed to perform. To this day, he has failed to tender return of the payment and has retained the money for his own use. He cannot have his cake and eat it, too.

Justice Wuest, writing for this Court in *Sjomeling v. Sjomeling,* 472 N.W.2d 487, 490 (S.D.1991) (Henderson, J., concurring in part, dissenting in part on a different issue), citing 24 Am.Jur.2d, Divorce and Separations, § 959, expressed: "And as a general rule, courts retain jurisdiction to make such further orders as are appropriate to compel compliance with its judgment."

Judge McMurchie, acting as the trial court, approved this Agreement deeming it was appropriate to compel the parties to comply with the Decree of Divorce because certain provisions were not self-executing. Why were these provisions not self-executing? A major marital asset consisted of real property while the general economy (particularly farming) was in a down state. Litigants and attorneys bargained to keep the corpus alive hoping that a liquid estate would exist to later divide. It was successful.

Attempting to implement the "non-executing" provisions, there were court hearings and accounting. As a result, the now warring parties arrived at an agreement. It should be upheld based on the performance

---

2. *See also Finck v. Finck,* 354 N.W.2d 198, 202 (S.D.1984) wherein we noted that attorney's fees are allowed in garnishment proceedings to enforce alimony awarded under a divorce decree.

* A decree of divorce was entered concerning these parties on August 19, 1984. Certain issues, by agreement, were reserved relating to the future disposition of property and operation of farm property.

of Thomas and by Sheffield adopting the Agreement when he obtains $27,727.07 thereunder. A restoration of status quo, as a requirement for rescission, is based upon essentially equitable nature of rescission. *Holcomb v. Zinke*, 365 N.W.2d 507 (N.D. 1985). One must restore, after promptly rescinding, the value received to the other party. *Check Control, Inc. v. Shepherd*, 462 N.W.2d 644 (N.D.1990). A party seeking equity must do equity. Where one party seeks to be discharged from a contract, he must restore or offer to restore to the other party the benefits received by him under it, to entitle him to relief. *Lovell v. McCaughey*, 8 S.D. 471, 66 N.W. 1085 (1896). 'Twas true in 1896 and it is still true today. Old but gold.