**Michael W. TAYLOR, Petitioner and Appellant,**

v.

**James ELLENBECKER, Secretary Department of Social Services, Defendant and Appellee.**

**No. 17278–a–RWS.**

Supreme Court of South Dakota.

Considered on Briefs March 21, 1991.

Decided June 12, 1991.

John M. Wilka of Christenson & Wilka, P.C., Sioux Falls, for petitioner and appellant.

A. Thomas Pokela, Sp. Asst. Atty. Gen., Sioux Falls, for defendant and appellee.

SABERS, Justice.

Michael W. Taylor (father) appeals a circuit court order affirming a Department of Social Services' decision holding him $11,-100 in arrears on his child support obligation. We affirm.

FACTS

Father and Colleen Mehlhoff (mother) were divorced in 1980. Mother was awarded custody of their minor child subject to father's visitation rights. Pertinent to the child support issues in this appeal, the divorce decree provided:

[Father] shall pay to [mother] the sum of $200.00 per month as support for the minor child of the parties until said child reaches the age of 18, graduates from high school, or is otherwise emancipated, said payments to be made through the

office of the Clerk of Courts for Minnehaha County, South Dakota.

\* \* \* \* \* \*

[Father] shall be entitled to claim the minor child of the parties as his exemption on his federal income tax return. The above provisions of the divorce decree have never been modified by a subsequent court order.

Father did not make his child support payments through the clerk of courts as required by the divorce decree. Rather, he made his support payments directly to mother. As a result, there is no exact record of the amount of support he paid. However, there was no dispute during the hearing on this matter that some months father paid nothing, usually he paid $100 and some months he paid $200. Mother's best estimate of the amount of father's arrearages at the time of the hearing was $11,100. Father does not dispute this amount on appeal.

In July 1989, mother applied for non-ADC child support services through the Department of Social Services. Apparently in that process, mother completed an affidavit of the amount of father's support arrearages. The Department subsequently issued a notice to father advising him of the amount of his arrearages and further advising that if father did not file a petition for a stay the Department intended to issue an order for a withholding of his income to pay past and future support. Father petitioned for the stay and a hearing was held on the petition by the Department on October 18, 1989.

During the hearing, father contended that in 1983 he and mother had agreed that he could pay $100 per month in child support and that mother would take the income tax dependency exemption for the child. Father also contended that mother agreed to accept his services in making certain improvements to her home as part of his child support obligation. Father claimed a right of set-off against his support arrearages for the value of the dependency exemptions over the years and the services he performed on mother's house. Mother disputed any agreements

with father reducing his support obligation but did acknowledge taking the dependency exemptions and father's performance of certain services for her.

After the hearing, the hearing examiner entered her findings of fact, conclusions of law and a proposed decision subsequently adopted by the Department. In essence, the hearing examiner reasoned that even if mother had agreed to a modification of the support provisions of the divorce decree that modification was never endorsed or approved by order of the circuit court. Therefore, the hearing examiner concluded that father was bound by the support provisions of the decree and that his arrearages were not subject to modification by any set-off. Father appealed to the circuit court which concurred in this reasoning and affirmed the Department's decision. Father appeals to this court.

## ISSUE

WHETHER FATHER IS ENTITLED TO A SET-OFF AGAINST HIS CHILD SUPPORT ARREARAGES FOR THE VALUE OF THE INCOME TAX DEPENDENCY EXEMPTION FOR THE MINOR CHILD AND THE VALUE OF HIS SERVICES ON MOTHER'S HOME?

Relying on the theory of quantum meruit, father contends that mother is indebted to him for the value of the income tax dependency exemptions she has taken in violation of the divorce decree and for the value of the services he has performed on her home. Father argues that he is entitled to claim these debts as a set-off against his indebtedness to mother for his child support arrearages.

This court has not addressed the issue of the right of set-off in an action for child support arrearages. However, the Iowa Court of Appeals was recently confronted with a similar argument in *In re Marriage of Mills*, 441 N.W.2d 416 (Iowa Ct.App. 1989). In *Mills*, the father fell behind in child support payments he was obligated to make under the terms of a divorce decree. The mother sought the services of the state's child support recovery unit which,

as in this case, obtained an order for a partial assignment of the father's income. Part of the assigned income was to be applied to the father's support arrearages. The father requested a set-off against his arrearages for a $5,000 debt allegedly owed to him by the mother under the terms of their divorce decree. The lower court granted the father a partial set-off. The appellate court reversed based in part on jurisdictional grounds. Additionally, the appellate court reasoned that the set-off essentially modified the original child support order by eliminating the father's past due support obligations. Quoting Iowa law to the effect that modification of child support orders operates prospectively only and not retrospectively and that the right to modify does not authorize a court to divest parties of rights already accrued under an order, the appellate court held that courts in Iowa have no authority to exonerate liability for past due support payments.

South Dakota law on modification of past due child support obligations does not differ in any significant respect from Iowa law. In 1987, the legislature passed SDCL 25–7–7.3 which provides:

> Any past due support payments are not subject to modification by a court or administrative entity of this state, except those accruing in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given to the obligee, the obligor, and any other parties having an interest in such matter.

Construing this statute in *Vellinga v. Vellinga*, 442 N.W.2d 472, 474 (S.D.1989), this court recently observed:

> The legislature's intent to prohibit modification in all but very limited circumstances plainly appears on the face of the statute. A narrow window is provided for modification of past due payments which accrue after notice of hearing is given to the obligee. *Any* other past due support payments are not subject to modification. The use of the term *any*, understood in its ordinary sense, clearly encompasses both past due support pay-

ments which accrued after the effective date of the statute and those which accrued prior to July 1, 1987.

\* \* \* \* \* \*

> For these reasons, we specifically hold that SDCL 25–7–7.3 is to be applied retroactively. (emphasis original).

Reference to these authorities makes clear that, just as in Iowa, modification of child support obligations in South Dakota operates prospectively only and not retrospectively. Further, the right to modify does not authorize divesting parties of rights already accrued under the original support order. This conclusion is reinforced by SDCL 25–7–7.4:

> Any payment or installment of support under an order for support, as defined by § 25–7A–1, whether entered by a court or an administrative entity of this state or of any other state or jurisdiction, which is unpaid after the date it is due, is a judgment by operation of law, with the full force, effect and attributes of a judgment of this state, including enforceability, and is entitled, as a judgment, to full faith and credit in this state.

Applying these authorities, it follows that neither the Department nor the circuit court in this case had authority to modify the child support provisions of the parties' divorce decree by eliminating father's past due support obligations through recognition of his request for a set-off. Father may well have a right to bring an independent civil action against mother for a quantum meruit recovery of the value of his services on her home and for her appropriation of the dependency exemption for the child. *See, Hershey v. Hershey*, 467 N.W.2d 484 (S.D.1991). However, as in *Mills*, these claims cannot be used as a set-off against father's support arrearages because that would constitute a retroactive modification of his support obligation.

Affirmed.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (concurring specially).

When I was in trial practice, and later as a trial judge, some of the old war horse trial judges (many passed on now) made determinations concerning child support from receipts in old shoe boxes, while heated exchanges that "I paid" and "No, you didn't," rang out in fury. These judicial gentlemen, to whom we owe so much, and who parted many litigious wildcats, decided that child support payments had to be paid at the county clerk's office. Obvious was the reason for the innovation: to have a record the parties and the trial court could reasonably rely on. This system worked in South Dakota for three decades and it is still working today. It has served our state well and has kept control of child support payments under one roof, namely the judicial roof.

Here, father is back to the shoe box argument; further, he would end run, like a scurrying tailback, the court order, effectively modifying same, by an extra-judicial agreement—and a purported agreement at that. To retrogress to the shoe box era, would extinguish a 30 year practice—born of necessity—again creating confusion, unreliability, and a waste of judicial resources.

Father, in this case, does not dispute the $11,100 arrearage. Yet, he attempts to evade the decree by "set-off" notwithstanding the decree providing: "... said payments to be made through the office of the Clerk of Courts for Minnehaha County, South Dakota;" and, also, notwithstanding that he did not comply with the latter directive. Therefore, there is no reliable record of child support, a fact totally antithetical to the old-timer's innovation and the decree, itself.

These divorced parents are not empowered to change a judge's order. *State, Fall River County v. Dryden*, 409 N.W.2d 648 (S.D.1987). Taylor owed a responsibility to petition the court for a modification, to cast

his bread on judicial waters, to then see if the trial judge would modify the decree.

As reflected by the facts, Taylor was not regularly paying child support; nor did he pay it to the Clerk of Court's office when he did pay some child support. His brief, at page 6, makes this admission.

Mother, the caretaker, was supporting the child. Oral agreement or not, it appears she was entitled to the income tax deduction and she took it. The IRS recognized it. Can he take advantage of the provision in the decree granting him the exemption of the minor child of the parties, when he does not support the child or makes a token effort towards supporting the child? *See, Sarver v. Dathe*, 439 N.W.2d 548 (S.D.1989). Remember, he admits he is $11,100 in arrears. It is highly questionable, given this protracted history of non-payment, that in a civil action, in futuro, he can advocate an equitable posture "for her appropriation of the dependency exemption of the child." It is difficult to turn back the clock of time—to undo that which is done. (Apparently, he wants an exemption for the child even though he did not support the child!) Sabers, J., writer of the majority opinion, cites this Court's holding in Hershey v. Hershey. *Hershey* was a plurality holding with only one Justice joining the opinion in its entirety.[*] Justice Wuest reflected in *Hershey* that this Court "should refrain from addressing hypothetical cases or issues which may arise in the future." He concluded that: "If and when the father brings a separate action, we may then address the issue." I agreed with Justice Wuest's rationale.

On the income tax exemption, there appears to be a strong equity for the mother. A statute of limitations, both federal and state, may well come into play if an action is instituted. Though it appears questionable, if it is pleaded below, the trial tribunal will necessarily be required to rule thereupon, with proper motions and relief. Our appellate review on a possible civil action must await another day.

---

[*] Hershey's facts involved a denial of rights of visitation and a grievous concealment of a child by a parent. No such allegation appears here.

As to the quantum meruit independent action against the mother by Taylor, in the future, it is noted that over a course of years, Taylor added a bedroom, reroofed the house, built a garage, poured footings and cement under the porch, changed numerous windows and doors, and added a remodeled kitchen to mother's home. Ostensibly, this was to serve as an "offset" to the virtual non-existent child support payments. A hearing officer found that the value of these improvements was, essentially, correct; however, the hearings officer determined that this extensive labor was all "gratuitous." Was it? We cannot decide this now; it would call upon us for an anticipatory ruling; it is not a justiciable issue ripe for appellate review.