Donna **VANDER WOUDE**, n/k/a Donna Jones, Plaintiff and Appellee,

v.

Robert **VANDER WOUDE**, Defendant and Appellant.

No. 17927.

Supreme Court of South Dakota.

Argued Jan. 13, 1993.

Decided June 2, 1993.

Mary Ann Galland, Gary W. Conklin of Galland Legal Clinic, Sioux Falls, for plaintiff and appellee.

Timothy J. Langley of Nasser Law Offices, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice.

Robert Vander Woude (Robert) appeals from an order of the circuit court ordering him to pay child support arrearages of $5,227.50, plus prejudgment interest. We affirm.

## FACTS

Robert and Donna J. Vander Woude, n/k/a Donna J. Jones (Donna), were divorced on February 11, 1974. Donna received physical custody of the parties' two minor children, Michelle and Deonne, and Robert was ordered to pay $42.50 per week per child as child support.

Thirteen years after the divorce, between May 1987 and December 1988, Robert was off from his job at Morrell's due to a labor dispute and claimed to be unable to make his child support payments. During this time, the parties' oldest child, Michelle, reached the age of majority. Robert did not make the required weekly child support payments of $85 between May 1, 1987, and Michelle's eighteenth birthday on February 16, 1988, nor did he make weekly $42.50 support payments between February 16, 1988, and December 3, 1988. The missed child support payments during this period totaled $5,227.50.

After December 3, 1988, Robert returned to work and resumed his weekly child support payments of $42.50. However, Robert missed a significant number of $42.50 payments between his return to work and August, 1990, when the parties' youngest

daughter, Deonne, attained majority. Robert's missed weekly payments for this period of time totaled $1,572.50.

In October, 1990, Donna wrote Robert informing him that he was in arrears on his child support in the amount of $1,572.50 for the period following his return to work until Deonne's eighteenth birthday. When Robert did not reply, Donna wrote a second letter on November 11, 1990, threatening legal action if Robert did not pay the $1,572.50 by December 1, 1990. In the letter, Donna stated: "No more support after that! I know that has got to be a thorn out of your side."

On December 23, 1990, Robert sent a letter and a check for $1,572.50 to Donna. Robert wrote the words "paid in full" on the memo portion of the check.

Donna cashed the check and wrote Robert a letter taking exception to portions of his letter that had accompanied the check. Donna stated that while she had thought of letting the earlier child support arrearages of $5,227.50 pass, she now regretted that decision.

Donna subsequently filed a motion for an order to show cause seeking a judgment against Robert for the $5,227.50 in child support arrearages. After a hearing on the matter, the circuit court issued a memorandum opinion awarding Donna $5,227.50, plus prejudgment and post-judgment interest. Robert appeals.

### ISSUES

1. Whether an agreement between divorced parents modifying child support arrearages is enforceable?

2. Whether an accord and satisfaction settling child support arrearages existed?

3. Whether the trial court erred in awarding prejudgment interest on each installment of child support not paid?

### ANALYSIS

*1. Modification of Child Support Arrearages by Agreement*

■ Parents are obligated to provide support for their children. This obligation is not only a matter of public policy, but is also statutory. SDCL 25–5–18.1; SDCL 25–7–6.1. This court has stated that a parent's duty to support his children is paramount and other debts of the parent are secondary. *Donohue v. Getman*, 432 N.W.2d 281, 283 (S.D.1988); *Brunick v. Brunick*, 405 N.W.2d 633, 634 (S.D.1987). "The children's best interest requires that they be supported." *Stach v. Stach*, 369 N.W.2d 132, 136 (S.D.1985).

■ Statutorily, courts and administrative entities may not retroactively modify past due child support obligations except for the period in which there is a pending petition for modification. SDCL 25–7–7.3. Robert asserts that while SDCL 25–7–7.3 limits retroactive modification by a court or administrative agency, it does not prohibit retroactive modification of child support arrearages by parents themselves. Justice Morgan in his special writing in *Kier v. Kier*, 454 N.W.2d 544 (S.D.1990), asserted that SDCL 25–7–7.3 does not expressly prohibit an obligee parent from modifying a payment. *Id.* at 548 (Morgan, J., concurring in part and dissenting in part).

■ However, while SDCL 25–7–7.3 does not directly address retroactive modification of a support obligation by a parent, SDCL 25–7A–17 requires that any agreement relieving a party of its support obligations be in writing and have the approval of the court.

An agreement between parents or other responsible persons relieving a party of any duty of support or responsibility or purporting to settle past, present or future support obligations as settlement or prepayment may not act to reduce or terminate any rights of the department of social services or any support obligee to recover from parents or other responsible persons for support provided, unless the department or any support obligee has consented to the agreement in writing *and the agreement has been approved by a court of competent jurisdiction.* (Emphasis supplied.)

SDCL 25–7A–17. "It is clear the statute is designed to restrict a party's ability to contract away a duty of support." *Sharp v. Sharp,* 422 N.W.2d 443, 447 (S.D.1988). Robert and Donna's alleged agreement to forgive Robert's $5,227.50 in child support arrearages was primarily an oral agreement, although it was also alluded to in several letters between the parties. Nonetheless, the agreement was never approved by a court, and thus it is not enforceable.

Furthermore, this court does not look favorably upon agreements to modify child support that have not received the court's approval. "This court does not approve of personal modifications to divorce decrees absent court amendment or. a binding agreement; only a trial court may retroactively modify child support payments based on the payor's financial situation and the children's welfare." *Stach,* 369 N.W.2d at 136 (citation omitted). Similarly, we hold that Robert and Donna were without authority to modify or forgive Robert's child support arrearages without court approval. The trial court found Robert obligated for $5,227.50 in arrears on his child support and this finding certainly is not one where we are left with a definite and firm conviction that a mistake was made. *Hilbrands v. Hilbrands,* 429 N.W.2d 750, 751 (S.D. 1988).

## 2. Accord and Satisfaction

Robert next asserts that Donna's endorsement of his check marked "paid in full" serves as an accord and satisfaction of all his child support arrearages. Robert points out that neither our accord and satisfaction statutes nor the corresponding case law specifically exclude child support payments from application of accord and satisfaction. It is true that SDCL 20–7–1 through SDCL 20–7–4 does not specifically exclude child support payments. It is also true that we have not previously addressed the application of accord and satisfaction to child support payments.

■ We must, however, look at the whole law and not merely those statutes that Robert finds favorable to his case. An accord and satisfaction agreement forgiv-

ing child support arrearages would still be subject to SDCL 25–7A–17 and thus require the approval of the court in order to be valid. Robert may not creatively circumvent the approval of the court necessary to modify or eliminate his child support obligation by alleging that an accord and satisfaction existed between him and Donna since the payments are for the children's benefit and not a debt due Donna per se. *Peterson v. Peterson,* 434 N.W.2d 732, 738 (S.D.1989). Robert's child support arrearages of $5,227.50 are not a debt incurred on a loan, in a business transaction, or in a contract dispute, and, therefore, are not subject to elimination by the pleading of an accord and satisfaction due to the special nature of the obligation.

## 3. Prejudgment Interest

Last, Robert asserts that the trial court erred in awarding Donna prejudgment interest on the unpaid child support arrearages. A child support obligation becomes a judgment by operation of law as it becomes due and owing. SDCL 25–7–7.4. As a judgment, a child support obligation is subject to interest at the judgment rate. SDCL 21–1–13.1; SDCL 15–16–3. "An award of interest on support arrearages is a matter of judicial discretion." *Kier,* 454 N.W.2d at 546.

■ Robert contends that the trial court abused its discretion in awarding interest, in that Robert had an alleged good-faith belief that he and Donna had a valid agreement forgiving his arrearages. We do not agree. The trial court's reasoning in awarding prejudgment interest follows our decision in *Kier,* where the father claimed that he quit paying child support because the mother led him to believe that his obligation had been terminated. *Id.* at 545. The mother had returned one child support payment to the father and made the comment, "keep the check, you're not seeing Tracy." *Id.* Subsequently, the father kept the check and did not tender the next ten child support payments. *Id.* On appeal, we determined that there was no agreement between the parties regarding the termination of child support, nor had the

mother made any representations which would have supported a conclusion by the father that he was no longer obligated to pay child support. *Id.* at 547.

■ In the case before us, Donna did not demand child support payments during the period in which Robert was not working at Morrell's. However, Donna's failure to demand child support payments did not negate Robert's obligation to make payments, which he did resume when he returned to work. Furthermore, Donna and Robert had no agreement whereby Robert's child support obligation was terminated. The only mention of terminating Robert's arrearages for the period in which he was laid off was made in Donna's letter to Robert where she stated: "Even though you lied, I was going to let pass all those months of child support due ... I now regret that decision." As in the *Kier* decision, we do not find sufficient justification for Robert's belief that his child support obligation had been terminated. Accordingly, we do not find that the trial court abused its discretion in awarding prejudgment interest and its award of same is affirmed.

Affirmed.

MILLER, C.J., and WUEST, J., concur.

SABERS, J., concurs specially and concurs in result.

HENDERSON, J., concurs in part and dissents in part.

SABERS, Justice (concurring specially and concurring in result).

The law and the public policy requiring court approval of child support modifications is sound and deserving of our support. It seems clear, however, that an accord and satisfaction occurred here. Otherwise, Donna would not have had any decision to "regret." In addition, the offensive letter arrived simultaneously with the check marked "paid in full." Instead of returning the check, Donna cashed it and then took issue with the letter and the amount claimed owed. I believe the trial court could have approved this agreement between consenting adults because this was all past-due support as all of the children had reached their majority. Neither the law nor public policy should be interpreted so strongly as to promote or approve fraud in inducing payments from a reluctant obligor in future cases. We and the trial court retain the right to review such cases. *See Taylor v. Ellenbecker,* 471 N.W.2d 587 (S.D.1991); Claudia Catalano, J.D., Annotation, *Spouse's Right to Set Off Debt Owed by Other Spouse Against Accrued Spousal or Child Support Payments,* 11 A.L.R. 5th 259 (1993) and cases cited therein.

I concur in result on Issue 3, prejudgment interest.

SDCL 25–7–7.4 provides:

**Unpaid payment or installment of support as judgment.** Any payment or installment of support under an order for support, as defined by § 25–7A–1, whether entered by a court or an administrative entity of this state or of any other state or jurisdiction, which is unpaid after the date it is due, is a judgment by operation of law, with the full force, effect and attributes of a judgment of this state, including enforceability, and is entitled, as a judgment, to full faith and credit in this state.

I realize that this court has previously stated that an award of interest on support arrearages is a matter of judicial discretion. *See* majority opinion (citing *Kier,* 454 N.W.2d at 546, SDCL 21–1–13.1 and 15–16–3). A plain reading of SDCL 25–7–7.4 as set forth above makes it clear that interest is due on any unpaid installment of support *from* "the date it is due" by operation of law. Therefore, interest would not be discretionary under SDCL 21–1–13 but mandatory under SDCL 25–7–7.4, 21–1–11, 54–3–5 and 54–3–5.1.

HENDERSON, Justice (concurring in part; dissenting in part).

Although I am in agreement with the merits of this case, believing that we have justly decided this appeal, both in settled law and in equity, there exists another matter which I feel compelled to address.

Donna Jones, formerly Donna Vander Woude, through her counsel of record, Mary Ann Galland, has filed a formal request for appellate attorney's fees of $3,495.70. This includes attorney's fees, sales tax, and costs and disbursements of $141.86. The affidavit in support of an award of attorney's fees is itemized, per our decision in *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985).

Considering the equities in this case and Donna Jones, formerly Donna Vander Woude, having prevailed in this appeal, I would award an appellate fee of $1,500 plus sales tax, costs, and disbursements expended herein by counsel on her behalf.

Mary Ann Galland, a licensed attorney in South Dakota, was actually the counsel for the prevailing party. The brief reflects "Galland Legal Clinic, P.C.," so this is a professional corporation. It should be noted that this corporation is in Sioux Falls and, as Jones' counsel, she drove from Sioux Falls to our state capitol at Pierre to argue this case. This would require at least one day's professional time, including travel and argument before this Court. There was rather fevered advocacy before our Court and there were many legal points urged, in zeal, before this body which heightened the discernment of the legal issues which had been briefed.

It is noticed by this writer that a fee is charged, by the filed affidavit, for co-counsel Gary Conklin, a licensed practicing attorney, plus additional fees for a legal assistant, and a charge for secretarial work. It strikes me that an appellate fee of $3,495.70 is excessive because of the addition of a fee for co-counsel, a legal assistant, and secretarial services. I question highly that the legal assistant, as an example, who does not write a brief and who does not advocate before the Supreme Court, should receive appellate attorney's fees. In my opinion, we cannot have a "doubling up" on attorney's fees because lead counsel or the head of a professional corporation decides to have an additional attorney work on the case.

However, in fairness, I certainly believe that appellate attorney's fees should be awarded, as I have expressed above for the professional services of Attorney Galland. One of the reasons, which I advance, justifying an appellate attorney's fee award, is this: Accord and satisfaction to child support payments has never been precisely addressed by this Court; therefore, we have a "law-maker" before us. And I so vote, as reflected above.