534 N.W.2d 346 (1995)
Michael A. BESS, Plaintiff and Appellant,
v.
Dorothy Irene BESS, Defendant and Appellee.
No. 18706.
Supreme Court of South Dakota.
Considered on Briefs November 30, 1994.
Decided June 28, 1995.
Rehearing Denied August 8, 1995.
William Taylor and Kristine Kreiter of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and appellant.
Lee R. Burd, Sioux Falls, for defendant and appellee.
TIMM, Circuit Judge (on reassignment).
This is an appeal from a judgment for child support arrearages. We affirm.
Dr. Michael Bess (Dr. Bess) and Dorothy Irene Bess (Irene Bess) married in 1975. Three children were born to themDarren, Sean, and Meghan. In 1990 they divorced. During the prelude to the divorce, an attorney for Dr. Bess drafted an agreement. Custody and support were addressed in paragraphs nine and ten:
9. Husband and Wife shall have joint custody of the minor children of the parties. Wife shall be primarily responsible for the physical care and custody of the children, and said children shall reside with her.
10. Husband agrees to pay Wife the sum of $600 per month per child for each child residing with Wife. Husband shall be entitled to claim all three children as dependents on his income tax returns and Wife agrees to execute any tax forms necessary for Husband to claim the children as dependents.
The agreement was signed by both parties on March 31, 1990.
On April 18, 1990, the parties endorsed a handwritten agreement which stated: "We agree that Meghan will live with [Irene Bess] and Sean and Darren will live with [Dr. Bess]."
*347 On June 5, 1990, a judgment and decree of divorce was entered, incorporating the March 31 agreement. Neither party appeared in court on the date of the divorce. The court was not made aware of the April 18 agreement.
In December of 1993 Irene Bess commenced a proceeding to collect child support arrearages. Dr. Bess denied that he was in arrears. At hearing, these facts were undisputed:
1. From June 1, 1990 through August 1993 Dr. Bess paid $1,200 per month in child support.
2. Dr. Bess paid $600 per month in child support from September of 1993 through December 1993.
3. From the time of divorce through the time of hearing Sean and Darren resided with Dr. Bess, and Meghan resided with Irene Bess.
Irene Bess took the position that the agreement of the parties was clear and unambiguous on its face, intending that the children reside with her and that Dr. Bess pay $1,800 per month in child support. Dr. Bess argued that paragraph ten of the agreement established support based on residency of the children, and demonstrated the parties' intent that residency be flexible. Given the actual residency of the children, he maintained that his support obligation was only $600 per month from date of divorce through hearing.
Judge Bogue agreed with Irene Bess. Dr. Bess looks to this Court for a second opinion. We agree with Judge Bogue.
Whether an agreement is unambiguous, and if so, what meaning and effect its language should be given, are all questions of law reviewable de novo on appeal. Johnson v. Johnson, 291 N.W.2d 776, 778 (S.D.1980); 17 Am.Jur.2d Contracts § 353 (1991).
An ambiguity exists when the language in an agreement "is reasonably capable of being understood in more than one sense." Jones v. American Oil, 87 S.D. 384, 209 N.W.2d 1, 3 (1973). That is not the case here. Paragraph nine of the agreement unequivocally expresses the intent of the parties that the children would reside with their mother. The residential arrangement is mandatory, as evidenced by the parties' employment of the word "shall". Consistently throughout the agreement the term "shall" is used in the imperative.[*] To read it otherwise would render the agreement meaningless.
In light of paragraph nine, the only meaning which can be given paragraph ten is that Dr. Bess had the duty to pay $1,800 per month in child support. Because he failed to do so, the unpaid support became a judgment against him as a matter of law, not subject to retroactive modification. SDCL 25-7-7.3 and 7.4; Kier v. Kier, 454 N.W.2d 544 (S.D. 1990); Vellinga v. Vellinga, 442 N.W.2d 472 (S.D.1989).
Although we find the agreement unambiguous, if we look beyond the four corners of the document to the circumstances surrounding the execution of the writing and the subsequent acts of the parties, the logical conclusion remains that the parties intended Dr. Bess to pay $1,800 in child support.
The affidavit of Dorothy Irene Bess elucidates the situation:
Dorothy Irene Bess, being first duly sworn on oath, deposes and says that I am the defendant in the above entitled matter and I make this Reply Affidavit in response to Mike's Affidavit of January 12, 1994.
The boys have been staying overnight with Mike, mostly because Mike threatened me and put enormous pressure on me to allow the boys to stay overnight with him more. I was afraid of Mike and could not stand up to him. During the divorce, Mike would describe incidents that occurred in the area, making vague threats by telling me that these were examples of what "could happen". For example, a father took his children to a motel and killed himself in front of them, and another man killed his wife when she returned home to pick up some clothing. In the beginning, Mike promised to pay the full amount of support if I would let the boys stay overnight with him more. We fought a lot over *348 this issue. He claimed he needed to "save face", but now I believe his real intention was to renege on his child support obligation. It has never been my intention to keep the children away from their father, so I have allowed them to stay overnight with him often.
I work three 12-hour days per week. Nearly every day when I am not working, the children come to my house for lunch. They are also at my home for supper and stay into the evening when I don't work. The boys do sleep overnight with Mike during the week, but they stay overnight with me on weekends when I am not working, during the summer and vacations from school (when I am not working).
I have provided food for the boys and nearly all their clothing, shoes and necessities since we were divorced. Money is a very important force in Mike's life and he is very reluctant to part with any of his money. He used to count the boys' socks and underwear when they move back and forth between us. Mike has purchased some clothing as gifts for the children, and some cheap items which the children were embarrassed to wear. This last year, he did purchase a leather jacket and athletic shoes for the boys. Mike does not feel it necessary to pay for Meghan to have her hair done and objected to contacts for her, so I have provided these items as well. Mike canceled dental insurance for the children because of the cost. I have been providing dental insurance as two of the children required braces.
I was not represented by an attorney in the divorce action. Mike is very controlling and cunning and I ended up with virtually no property. Mike received the 80-acre farm and four bedroom house (equity at least $65,000), all farm equipment and crops, as well as all his partnership interest and Keogh fund in McGreevy Clinic, which my attorney advises would be well over $100,000 in value. I received a mortgaged vehicle and $26,000 cash from which I was to repay a debt to my parents of $20,000. Now, because of the wording of the child support provisions (which his attorney drafted), and his pressures and threats to have the boys with him more, he is trying to avoid paying his full child support obligation.
Regardless of the time spent with Mike, I still provide most of the children's needs. The sum Mike is paying is proportionate to his ability to pay to assist with those needs. Mike sold his interest in McGreevy Clinic and opened a new clinic in 1991. I do not know his current earnings, but believe them to be substantial. By contrast, I am a nurse at Sioux Valley Hospital and earn about $35,000 per year.
WHEREFORE, defendant prays that I be awarded the relief requested in my affidavit of December 10, 1993.
 /s/Dorothy Irene Bess
 Dorothy Irene Bess, Defendant
This testimony rings true. It provides a believable explanation of why Dr. Bess did not instruct his attorney to modify the agreement of March 31, 1990, prior to submitting it to the court. Simply put, there was no need to. Although the handwritten agreement of April 18, 1990, changed the residence of the Bess boys, the consideration for that change was Dr. Bess' promise that he would make the $1,800 per month support payments required in the agreement of March 31, 1990. Under the circumstances of this case, that was a fair deal. The parties clearly contemplated that notwithstanding the change in the boys' residence, Irene Bess would incur considerable expense in caring for them. Facts bear this out. She maintained a home where the boys spent significant amounts of time. They often stayed there during the day from lunch through dinner, which their mother provided. They stayed overnight on weekends, in the summers, and on school holidays. Irene Bess provided them with most of the necessities of life including food, clothing, and shelter. She was even forced to pick up the cost of dental insurance when Dr. Bess opted not to honor the parties' agreement regarding that expense.
Dr. Bess' monthly payment of $1,200 for thirty-nine consecutive months cannot be reconciled with his position that the parties' agreement intended that he only pay $600 per month. If paragraph ten of the agreement *349 so intended, why did he wait three years and three months to act in accord? On that question the record is curiously silent. There is certainly no evidence to support an inference that the "overpayments" were born of altruism.
On the other hand, the fact that Irene Bess accepted $1,200 per month for over three years without bringing an action to enforce the agreement is not necessarily an indication that the parties intended that Dr. Bess' support obligation would be lessened if the boys resided with him. As evidenced by her affidavit, Irene Bess was obviously intimidated by her ex-husband. It is entirely realistic to infer that she chose to avoid conflict with Dr. Bess as long as he continued to pay two-thirds of his support obligation. However, once Dr. Bess reduced his child support payment to $600 per month in late 1993, given her expenditures for support of her sons, Irene Bess had no choice but to finally engage Dr. Bess in court.
Having considered Irene Bess' request for appellate attorney fees, taking into account the itemized costs incurred and legal services provided, together with the factors set forth in Abrams v. Abrams, 516 N.W.2d 348 (S.D. 1994), we award her $1,500.
SABERS and KONENKAMP, JJ., concur.
MILLER, C.J., and WUEST, Retired Justice, dissent in part and concur in part.
TIMM, Circuit Judge, for AMUNDSON, J., disqualified.
GILBERTSON, J., not having been a member of the Court at the time this case was submitted did not participate.
WUEST, Retired Justice (dissenting in part and concurring in part).
I dissent. The final decree contains inconsistent provisions which creates an ambiguity therein. On March 31, 1990, the parties signed an agreement pending divorce, regarding the division of their property and the custody and support of their three children. We have held that in determining the proper interpretation of an agreement incorporated into a divorce decree, a court must seek to ascertain and give effect to the intention of the parties. Kier v. Kier, 454 N.W.2d 544, 547 (S.D.1990) (citing Malcolm v. Malcolm, 365 N.W.2d 863, 865 (S.D.1985); Johnson v. Johnson, 291 N.W.2d 776, 778 (S.D.1980)). Although Irene stated by affidavit, quoted in the majority's opinion, that she was not represented by an attorney in the divorce action, she contacted an attorney in early 1990 to draft this agreement. Both Michael and Irene found the resulting document unacceptable. Michael then contacted an attorney who drafted an agreement acceptable to both parties.
Paragraph nine of the agreement indicated Michael and Irene would share legal custody of their children and that Irene would have primary physical custody of the Bess children. However, this did not occur. Six weeks prior to the June 5, 1990 entry of the divorce decree, Irene and Michael agreed and set out in writing that Sean and Darren would reside with their father and Meghan would reside with her mother. Paragraph ten of the court-approved agreement, which established Michael's child support obligations, anticipated that not all three Bess children would live with their mother at all times. It provided, in relevant part:
Husband agrees to pay Wife the sum of $600 per month per child for each child residing with Wife. (emphasis added).
At issue in this case is not where the children should reside, but how much Michael should pay in child support. In this regard, the parties' intentions are clear: Michael will pay $600 per month for each child residing with Irene. One child resides with Irene. This is set out in the parties' handwritten agreement. The trial court also found this to be so. In its memorandum decision, incorporated into its findings of fact and conclusions of law, the trial court stated "the boys did spend a majority of their time on the farm with father and have been residing with him. The girl stayed in the custody of her mother and resided with her since the time of the divorce." (emphasis added). Therefore, Michael's support obligation is $600 per month.
Courts encourage settlement in divorce actions. Beermann v. Beermann, 526 N.W.2d *350 127, 129 (S.D.1995). Property and support agreements between parties to a divorce, however, must have the approval of the trial court. Vander Woude v. Vander Woude, 501 N.W.2d 361, 364 (S.D.1993). "This court does not approve of personal modifications to divorce decrees absent court amendment or a binding agreement...." Id. (citing Stach v. Stach, 369 N.W.2d 132, 133, 136 (S.D.1985)). I do not disagree with this settled law. However, the parties' handwritten agreement indicating their preference regarding the residency of the children in no way changes Michael's support obligation, approved by the court, which states Michael will pay $600 per child for each child residing with Irene.
A court must give effect to the parties' intent in determining the proper interpretation of an agreement incorporated into a divorce decree. Kier, 454 N.W.2d at 547 (citing Malcolm, 365 N.W.2d at 865; Johnson, 291 N.W.2d at 778). To determine the parties' intention, a court looks to the language used by the parties. Id. It can also consider the parties' subsequent behavior as evidence of the construction actually placed on the agreement by the parties. Id. (citing Malcolm, 365 N.W.2d at 865; Huffman v. Shevlin, 76 S.D. 84, 89, 72 N.W.2d 852, 855 (1955)).
It is undisputed that Irene accepted child support payments from Michael for each child residing with her for three and one-half years before claiming "she signed under duress" and that Michael was in arrears on his child support obligation. Although the majority claims this delay is explained because Irene was intimidated by Michael, and points to her affidavit in support, the alleged intimidating events described by Irene in her affidavit occurred on and around the time of the divorce. This was three and one-half years before Irene filed suit against Michael in December 1993. This prolonged delay before bringing a suit for arrearages is evidence the support arrangement was agreed upon and acceptable to her.
Furthermore, the majority asserts Irene accepted this amount for three and one-half years without complaint because she was "obviously intimidated" by Michael, inferring "that she chose to avoid conflict" with Michael. It is not our obligation or right, sitting as an appellate court, to infer facts not found by the trial court. Eichmann v. Eichmann, 485 N.W.2d 206, 209 (S.D.1992). The trial court made no findings of fact in this regard. These inferences, by the majority, are derived from Irene's affidavit from which the trial court made no findings. Reliance on Irene's affidavit to support the majority's opinion is entirely misplaced and beyond the limited scope of our appellate duties.
I would reverse, but concur in the award of $1500 in appellate attorney fees to Irene.[*]
I am hereby authorized to state that Chief Justice MILLER joins this special writing.
NOTES
[*] The parties agreement, drafted by Dr. Bess' attorney, contains the word "shall" fourteen times.
[*] The trial court found Sean and Darren have resided with their father since the June 1990 divorce. SDCL 25-7-6.14 provides that "[a]n abatement of a portion of the child support may be ordered if a child spends more than twenty-nine consecutive days with the noncustodial parent."