Susan J. HOUSER, Plaintiff
and Appellee,

v.

Robert J. HOUSER, Defendant
and Appellant.

Robert J. HOUSER, Appellant,

v.

STATE of South Dakota, DEPARTMENT
OF SOCIAL SERVICES; and Susan J.
Houser, a/k/a Susan J. Fordice, Appellees.

Nos. 18961, 19002.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1995.

Decided Aug. 16, 1995.

Lewayne M. Erickson, P.C., Brookings, for appellee Susan Houser.

Alvin R. Pahlke, Tripp County State's Atty., Winner, for appellee, State.

J.M. Grossenburg Winner, for appellant.

SABERS, Justice.

Custodial parent (mother) seeking modification of child support and payment of arrearages obtained favorable rulings from the administrative law judge. Father appealed. The circuit court allowed an abatement of child support under SDCL 25–7–6.14 for the minor children's extended visits with father. The court modified future support for the remaining minor child. Father appeals and mother cross appeals and we reverse in favor of mother.

## FACTS

Bob and Susan Houser were divorced on May 17, 1984. They have three children: Dana, born November 13, 1969; Kim, born June 6, 1974; and Laura, born August 23, 1978. At the time, it was anticipated that the children would spend summers with Bob and the school year with Susan. The parties entered into a stipulation which provided that the parties shall have joint custody of the children. Primary custody went to Susan for nine months and Bob for three months. Liberal visitation privileges were granted. The Decree further stated:

> [T]he Defendant shall pay as child support for and on behalf of the minor children of the parties the sum of $400.00 Dollars per month ... until said children shall attain the age of majority or until further order of the Court. The aforesaid support payments shall be paid into the office [of] the Clerk of Courts in and for the County of Brookings, State of South Dakota.

Bob and Susan sometimes lived together after the divorce. The children lived with Bob for various lengths of time, up to one year. When the children stayed with Bob, he would reduce the amount of child support he paid to Susan by approximately one-third, or $135, for each child. Bob claims he and Susan agreed to interpret the Decree in this manner and that she agreed that any of Bob's child support obligations would be offset by any of Bob's expenditures on behalf of the children, especially transportation costs during visitations. Susan denies any such agreement.

In the summer of 1993, Susan entered the Illinois Office of Child Support Services to seek a "Modification of Support" and was advised that obtaining a modification and collecting past due child support were one process. The South Dakota Department of Social Services (DSS) notified Bob on October 30, 1993 that he owed $33,050.00 in arrearages. DSS intended to restrict Bob's ability to renew his driver's license and his hospital administrator's license. Bob is a hospital administrator with an annual salary of $80,808, plus additional incentives. On November 9, 1993, Bob requested an administrative review. The administrative law judge found Bob owed $31,909.00 for child support from June, 1984 to December, 1993. Bob appealed to the circuit court of Tripp County. Bob also filed, in Brookings County, a Motion to Vacate (abate) child support, for a new support order for the remaining minor child and to change venue to Tripp County. The court consolidated the two trials and changed venue to Tripp County.

The court determined that the finding of $31,909.00 in arrearages was clearly erroneous. The court determined the 1984 Decree provided the child support obligation should be reduced by a pro rata one-third when each child reached 18, or 19 if enrolled as a full-time student in secondary school. The court concluded that abatement was not recognized until July 1, 1989 when SDCL 25–7–6.14 became effective and that the statute was not intended to be retroactive. The court also concluded child support may be abated when a child spends more than 29 consecutive days with the noncustodial parent. The court abated $4,256.00. The court also determined that $16,215.00 was due for child support and that Bob would owe $679 per month for Laura, the remaining minor child. Bob appeals and Susan cross appeals. We reverse in favor of Susan.

### 1. Whether the 1984 Divorce Decree provides for a lump sum or a pro rata distribution for child support?

Bob claims the parties interpreted the Decree to provide approximately $135 per child. As each child reached majority, Bob claims his support obligation would be reduced by $135. He also claims child support is reduced by approximately $135 per child per month if any child lived with him that month. His support payments reflect his interpretation. Susan claims she never agreed to this interpretation.

Bob claims "the construction given by the parties themselves to the contract as shown by their acts, if reasonable, will be accorded great weight and usually will be adopted by the Court[,]" quoting *Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D.1985). He claims:

> The parties did not agree to ignore or change the Decree of Divorce without court order. They agreed on how to interpret it and they put their interpretation into practice.

Bob claims since the parties could "determine exact times of primary custody," they should be allowed to prorate the $400.00 per month in child support.

> Contractual stipulations in divorce proceedings are governed by the law of contracts. The interpretation of a contract is a matter of law for a court to decide.

*Estate of Thomas v. Sheffield*, 511 N.W.2d 841, 843 (S.D.1994) (quoting *Seablom v. Seablom*, 348 N.W.2d 920, 924 (N.D.1984)). Because the interpretation of the Decree is a question of law, we give no deference. *Id.*

The administrative law judge found the Decree was not ambiguous and provided $400.00 per month in child support until all the children reached majority. The circuit court found this to be clearly erroneous. However, the court did not enter any specific finding on the interpretation of the Decree. Bob claims the court treated the Decree as providing $133 per month per child when the court calculated abatement.

In *Radigan v. Radigan*, 465 N.W.2d 483, 485 (S.D.1991), the divorce decree provided child support of "$750 per month for the support of the *minor children*[.]" (Emphasis added). We held the obligation was not reduced when one of the two children reached majority. *Id.* We noted child support under SDCL 25–7–6.2 would have been much greater had the statute been in effect in 1989. Father's remedy once the older child reached majority was to seek modification with the court. *Id.*

Here, the 1984 Decree provides that child support shall be $400.00 per month "for and on behalf of the minor children" and continues until "said children shall attain the age of majority or until further order of the Court." It makes no provision for a pro rata distribution of the obligation. We hold that child support under the Decree was to remain at $400.00 until "said *children* attain the age of majority[.]" (Emphasis added). Because the 1984 Decree provided $400.00 per month in child support, any deviation from this amount was a modification of the decree, not a mutual "interpretation" of the decree by the parties, as claimed by Bob.

Bob did not seek court approval for reducing his child support by a "pro rata one third" or $135.00. In fact, Bob did not follow the Decree and make his child support checks payable to the Brookings County Clerk of Courts. After one month under the Decree, he made payments directly to Susan. The informal modification was not approved by the court. In *Vander Woude v. Vander*

*Woude,* 501 N.W.2d 361, 363 (S.D.1993), mother informally forgave past child support for other consideration. The agreement was not court approved. We held the parties were without authority to modify or forgive father's child support arrearages without court approval. *Id.* at 364. Therefore, we must reverse the circuit court and affirm the administrative law judge's finding that the Decree provides $400.00 in support until "all children attain the age of majority."

## 2. Whether abatement under SDCL 25–7–6.14 was properly granted and calculated?

SDCL 25–7–6.14 provides:

An abatement of a portion of the child support may be ordered if a child spends more than twenty-nine consecutive days with the noncustodial parent.

SDCL 25–7–6.14 became effective July 1, 1989. 1989 S.D.Session Laws, ch. 220, § 14. The court properly concluded abatement was not recognized until 1989 and that no retroactive intent appears from the statute. SDCL 2–14–21. The court reduced Bob's child support by $133.00 for each month one of the children stayed with him for more than 29 consecutive days.[1]

Susan claims SDCL 25–7–7.3, 25–7–7.4 and 25–7A–17 "prohibit retroactive modification of child support obligations, and based on this court's consistent opinions enforcing these statutory provisions, Bob cannot try to use the abatement statute to do what the above statutes and cases prohibit." She claims a "reasonable interpretation" of SDCL 25–7–6.14, based on *Whalen v. Whalen,* 490 N.W.2d 276 (S.D.1992), "requires the obligor first pay his *full* child support obligation before seeking an abatement, and then seek the abatement only during the time his obligation remains in effect for that particular child(ren) so that his *future* support obligation for that particular child(ren) may be abated."

■ Bob had a duty to pay $400.00 per month for child support. Any unpaid support became a judgment against him as a matter of law, not subject to retroactive mod-

ification. SDCL 25–7–7.3, 25–7–7.4, *Kier v. Kier,* 454 N.W.2d 544 (S.D.1990). As we stated in *Whalen,* 490 N.W.2d at 280, "it is our responsibility to give reasonable construction to both [statutes], and if possible, to give effect to all provisions under consideration, construing them together to make them 'harmonious and workable.'" (citations omitted).

■ In *Whalen,* 490 N.W.2d at 282, we stated that satisfying the 29–day visitation of SDCL 25–7–6.14 did not mean that it was a "'per se' change of circumstances which would justify a *modification.*" (Emphasis in original). There, the father did not petition for an abatement. Here, the question is whether SDCL 25–7–6.14 may be used to abate past due child support when the 29–day visitation periods have been proven.

SDCL 25–7–6.14 is the result of the South Dakota Commission on Child Support, (Commission), which provided recommendations to the Legislature and the Governor. *Whalen,* 490 N.W.2d at 282; *see* Barbara Everist, *Major Changes in South Dakota Child Support: The 1989 Revisions,* 34 S.D.L.Rev. 573, 573 and 596 n. 184 (1989). "It is proper to take into consideration reports of a commission transmitted to the legislature on a particular subject for the purpose of construing a statute framed with special regard to the recommendation." *Whalen,* 490 N.W.2d at 282 n. 4 (citing 73 Am.Jur.2d *Statutes,* § 168 (1974)).

The Commission Report states:

[T]he Commission is recommending the Court be allowed to grant a reduction during those extended periods of visitation. The Commission could not agree on any particular recommended amount for the reduction. The proposed language provides an after-the-fact abatement to avoid the situation where a parent does not actually exercise extended visitation yet receives a reduction in child support.

\*　　\*　　\*　　\*　　\*　　\*

For example, if a parent exercises visitation in June for the entire month, he or she

---

1. The circuit court found that the administrative law judge's finding that Bob was not entitled to abatement was clearly erroneous. However, the administrative law judge noted that Bob had not petitioned for abatement. He did not petition for abatement until after the administrative hearing.

would be entitled to the abatement in the July child support. If a 50 percent abatement were allowed, the July payment would be reduced by 50 percent.

*Report of the South Dakota Commission on Child Support*, December 1988, at 15 and 15 n. 9.

▮ The Commission's example contemplates an abatement of a future obligation, not an abatement of an *existing* obligation. *Id.* Abatement essentially gives credit on future payments for extended visitations which have already occurred. *See Sjolund v. Carlson*, 511 N.W.2d 818, 822 (S.D.1994) (modifying *Whalen* by allowing a court to order a "forward-reaching abatement" if "expressly contingent on the obligor parent's actual exercise of an extended visitation or custody period in excess of 29 consecutive days[.]"); *see Id.* at 823 (Sabers, J. dissenting on other grounds). This is "harmonious and workable" with SDCL 25-7-7.3, which provides:

> Any past due support payments are not subject to modification by a court or administrative entity of this state[.]

The court has in effect modified retroactively Bob's child support obligation by calling it an "abatement." We reverse the court's abatement of Bob's past due child support.

**3. Whether Bob is entitled to a set-off for payment of transportation costs and other expenses?**

▮ Bob claims he and Susan agreed to off-set child support payments by the amount Bob spent on transportation costs for visitation and other expenses for the children. As noted above, the Decree did not provide this right of set-off or any other "interpretation" Bob claims should be given. The Decree states the parties shall share the transportation costs equally. In *Taylor v. Ellenbecker*, 471 N.W.2d 587, 588 (S.D.1991), father paid child support directly to mother instead of the Clerk of Courts. Father claimed a right of set-off on his child support arrearages for the value of his services furnished to mother and for the value of mother receiving the dependency exemption for her income tax. *Id.* at 587–88. We held:

> [N]either [DSS] nor the circuit court in this case had authority to modify the child support provisions of the parties' divorce

decree by eliminating father's past due support obligations through recognition of his request for a set-off.

*Id.* at 589.

Here, the Decree did not provide for this set-off nor does SDCL 25-7-7.3 and 25-7-7.4 provide authority to do so under these circumstances. Under *Taylor*, the administrative law judge and the court erroneously modified Bob's support obligation by subtracting $3,759.00 for transportation costs and other expenditures when the decree required transportation costs to be shared equally. There is no showing in this record that the $3,759.00 paid by Bob for transportation costs was anything other than his share. Therefore, we reverse the claim for set-off for transportation costs.

We have reviewed Bob's other arguments and issues and consider them to be without merit and contrary to the letter and spirit of these cases: *Leonard v. Leonard*, 529 N.W.2d 208 (S.D.1995); *Bess v. Bess*, 534 N.W.2d 346 (S.D.1995); *Whalen*, 490 N.W.2d 276; *Vander Woude*, 501 N.W.2d 361; *Radigan*, 465 N.W.2d 483; *Vellinga v. Vellinga*, 442 N.W.2d 472 (S.D.1989); *Sharp v. Sharp*, 422 N.W.2d 443 (S.D.1988). We reverse in favor of Susan and award her appellate attorney fees of $2,000.00. *See Jopling v. Jopling*, 526 N.W.2d 712 (S.D.1995).

KONENKAMP and GILBERTSON, JJ., concur.

MILLER, C.J., and AMUNDSON, J., dissent.

MILLER, Chief Justice (dissenting).

I dissent.

What started as a simple administrative request for a modification in child support has become a $32,000 windfall for Susan Houser. When Susan first contacted the Illinois Office of Child Support Services, she merely sought an increase in her current child support income of $135 per month. Susan only pursued the claimed arrearages after that office informed her that modifications and past-due collections were one process. Under the majority view, as a result of this bureaucratic intervention, she will now receive child support for periods when her

children were: (a) not living with her and/or (b) adults. How can an equitable action for child support spawn such inequitable results? I am especially mystified by the majority opinion, because neither the divorce decree nor our child support statutes mandate such unfairness.

### 1. Whether the 1984 Divorce Decree provides for a lump sum or a pro rata distribution for child support?

According to the majority, the 1984 divorce decree is unambiguous and clearly provides for a monthly support award of $400 until *all* the children reach majority. The majority argues that our decision in *Radigan v. Radigan*, 465 N.W.2d 483 (S.D.1991), mandates this result. I disagree. Contrary to the majority's statement, the language of the divorce decree in *Radigan* is not similar to the language in this case. In *Radigan*, the decree ordered the father to pay $750 per month in child support "until *both* children reach the age of majority or until further Order of the Court." *Id.* at 485 (emphasis added).\* Since the decree specifically required that "both children" reach majority, it is not surprising that this Court required father to pay $750 per month until his youngest child turned eighteen. In contrast, the divorce decree here does not include any explicit statement that Bob pay the $400 per month until *all* children reach majority. There lies the ambiguity. The decree simply provides:

> ... [Bob] shall pay as child support for and on behalf of the minor children of the parties the sum of $400.00 Dollars per month ... until said children shall attain the age of majority or until further order of the court.

It is unclear whether the support award is intended to remain at $400 until all children reach majority or whether support was intended to decrease by a one-third share as each child turned eighteen.

Because the agreement included in the divorce decree is ambiguous, the parties' actions following the divorce are significant. We have written:

> Another test to be applied in determining the meaning of a contract is the con-

struction actually placed on the contract by the parties as evidenced by their subsequent behavior.

> If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding the execution of the writing and the subsequent acts of the parties. The construction given by the parties themselves to the contract as shown by their acts, if reasonable, will be accorded great weight and usually will be adopted by the court.

*Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D.1985) (citations omitted).

In this case, the actions of Bob and Susan after the divorce show that they intended to reduce support payments as the older children reached majority. Bob paid no support for his two older children after they turned eighteen years old on November 13, 1987, and June 6, 1992, respectively. Bob had previously reduced his support payments by roughly two-thirds, from $400 per month to $135 per month for his remaining minor child who resided with Susan. Susan accepted reduced payments for years without seeking an enforcement order. Therefore, the decree should be interpreted to coincide with the parties' demonstrated intention to reduce child support payments as their older children reached age eighteen.

Pursuant to SDCL 25–5–18.1, child support obligations persist until the child attains eighteen years of age or until the child is nineteen years old if the child is a full-time student in a secondary school. Applying this statute to the parties' agreement, Bob's support obligation for his oldest child terminated in June 1988, when she had completed secondary school and had turned nineteen. Bob's child support obligation for his middle child concluded at the end of June 1992, when she had graduated from high school and had turned eighteen.

### 2. Whether abatement under SDCL 25–7–6.14 was properly granted and calculated?

The majority accepts Susan's claim that Bob should not be allowed an abatement of

---

\* The majority quotes our conclusion in *Radigan* rather than the language of the decree.

child support, because he did not promptly enforce his right to receive it in a court of law. According to the majority, Bob should have made a $400 payment during the first month the children resided with him, and then immediately applied to the court for an abatement of subsequent child support obligations. Ironically, the majority does not impose the same prompt enforcement requirements on Susan. Instead, the majority endorses Susan's claim to additional child support when she complacently accepted a lower amount for nine years. In an equitable action, one party should not be permitted to sit on her rights while another party is penalized for doing so. If we allow Susan to wait nine years before pursuing child support arrearages, as we must, we should certainly permit Bob to respond with an abatement claim covering the same period.

The majority further argues that abatement should only be permitted to reduce future obligations. According to the majority, applying abatement to past obligations amounts to retroactive modification. The majority relies on a footnote in the 1988 Report of the South Dakota Commission on Child Support:

> For example, if a parent exercises visitation in June for the entire month, he or she would be entitled to the abatement in the July child support. If a 50 percent abatement were allowed, the July payment would be reduced by 50 percent.

*Whalen v. Whalen*, 490 N.W.2d 276, 282 (S.D.1992) (citing Report of the South Dakota Commission on Child Support at 15 n. 9 (1988)). However, the Commission's example simply demonstrates that a parent is not entitled to abatement until the child has spent more than 29 consecutive days with the parent. Rather than imposing a requirement that all abatement come from future payments, the Commission simply illustrated the importance of after-the-fact proof of visitation. Furthermore, abatement is appropriate where the obligation has simply *accrued;* the obligation need not have been paid in full. *See Whalen,* 490 N.W.2d at 282 ("Use of the abatement language [in SDCL 25–7–6.14] indicates the legislature contemplated the obligation would have already *accrued* when the obligor spouse seeks abatement."). Although forward-reaching abatement is certainly an

option for a non-custodial parent, *see Sjolund v. Carlson,* 511 N.W.2d 818 (S.D.1994), abatement of past due payments is still proper.

Neither Susan nor the majority dispute the extended periods of time during which one or more of the children resided with Bob. Giving SDCL 25–7–6.14 prospective application, the trial court properly permitted abatement of child support during these periods.

I would affirm the trial court on Issues 1 and 2.

I am authorized to state that AMUNDSON, J., joins in this dissent.