1998 SD 89

**Vera B. O'GRADY, Plaintiff and Appellant,**

v.

**James M. O'GRADY, Defendant and Appellee.**

No. 20088.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1998.

Decided Aug. 5, 1998.

---

Mary McCusker, Rapid City, for plaintiff and appellant.

Thomas Adams of Voelker and Adams, Deadwood, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Vera B. O'Grady appeals from an order setting child support and arrearages. We reverse.

### FACTS

[¶ 2.] Vera and James O'Grady were married in 1973. They had four children. Sean was born on April 15, 1975; Shelly on June 26, 1976; Thomas on January 15, 1979; and Robert on April 7, 1980.

[¶ 3.] Vera and James divorced in 1985. The judgment and decree of divorce incorporated their stipulation regarding child custody and support. Vera received custody of the four children and James agreed to pay $100 "per child per month during the children's minority as child support."

[¶ 4.] In 1990, James filed a petition for modification of child support. The matter was referred to a court appointed referee who analyzed the case under the recently enacted child support guidelines of SDCL ch 25–7. The referee concluded that James' obligation, which had been $400 per month, should now be $280 per month. The trial court adopted the report and entered an order amending the child support obligation.

[¶ 5.] Vera moved to modify James' child support obligation to $633 per month in 1992. Following extensive discovery, the trial court ordered James to pay "child support in the amount of $469 per month beginning July 1, 1992[.]" Then, in February 1993, the parties stipulated:

*Child Support:*

James O'Grady will pay Vera O'Grady the sum of $469.00 per month, as and for child support, said payments to commence on January 1, 1993, and payable on the 1st day of each and every month thereafter until the minor children reach the age of nineteen (19) or graduate from high school, whichever occurs first. Said payments shall be made to the Pennington County Clerk of Courts, P.O. Box 230, Rapid City, South Dakota 57709.

*Child Support Arrears:*

James M. O'Grady owes child support arrears as of December 31, 1992, in the amount of $7,776.29. In addition to the above-referenced monthly child support payments, James M. O'Grady will pay Vera B. O'Grady $50.00 per month toward said child support arrears, said payment being due and payable on the 1st day of each and every month until paid in full.

The trial court filed an order approving the stipulation on February 23, 1993.

[¶ 6.] After this order was entered, James approached Vera on several occasions and asked her to agree to lower the child support. She advised him to notice the matter for hearing as he had done in the past, so that child support could be calculated according to their incomes. In 1994 she also had their case worker send James the appropriate forms for doing so. James apparently did not complete the forms or cause the matter to be set for hearing. Instead, from January 1993 through April 1994, James made the court approved monthly payments of $519 ($469 child support, $50 arrearages). From May 1994 through March 1995, he unilaterally reduced his payment to $284.50 and missed his February 1995 payment. From April 1995 through September 1996 he resumed making full monthly court approved payments of $519.

[¶ 7.] On August 29, 1996, James filed a motion to determine child support:

This Motion is made upon the grounds and for the reasons that the latest Stipulation

and Order provided that child support be paid "until the minor children reach the age of 19 or graduated from high school, whichever occurs first", and no recomputation has been done to change the child support as each child reached the age of 19 or graduated from high school. Shawn [sic] O'Grady turned 19 years of age on April 15, 1994. Shelley [sic] O'Grady was 18 years of age and had graduated from high school as of June 26, 1994. A recomputation needs to be completed showing the child support due as each child reached the mandatory age and showing how the excess payments that have been made to the Plaintiff should be applied to arrearages.

[¶ 8.] The trial court concluded, in part,

The order setting child support for the defendant was self executing, and therefore, the defendant's child support obligation beginning the first day of July, 1994 was $379 per month for two children. Absent unusual circumstances, Thomas O'Grady will be eighteen (18) years of age and will have graduated from high school by the 1st day of June, 1997. The Defendant's child support obligation will then be reduced to Two Hundred Forty Five Dollars ($245) and absent unusual circumstances, Robert O'Grady will be eighteen (18) years of age and will have graduated from high school by the first day of June, 1998, following which Defendant will no longer have a current child support obligation.

The trial court also ordered that any amount of payment James made since July 1, 1994, which exceeded $379 should be applied to reduce arrearages.

### Child Support

[¶ 9.] The parties' 1993 court approved stipulation regarding child support provided that James was to pay $469 per month "until the minor children reach the age of (19) or graduate from high school, whichever occurs first." Sean turned 19 on April 15, 1994. Shelly was 18 and a high

school graduate as of June 26, 1994. James did not seek court approval for a modification of child support based upon these events until August 1996. From May 1994 through March 1995, however, he prorated the $469 to pay for only two children and paid $284.50 monthly ($117.50 per child plus $50 for arrearages).[1] After that he resumed payments based upon the 1993 stipulation ($469 child support; $50 arrearages).

[¶ 10.] James contends that the stipulation provided for an automatic reduction of child support when each child turned 19 or graduated from high school. Therefore, he contends that the trial court in 1996 merely recalculated the correct amount of child support that he should have owed since mid 1994. Vera contends that the stipulation provided a lump sum distribution of child support for all four children and that all children must reach 19 or graduate before there can be a modification. She does not disagree that age 19 or graduation can be a basis for child support modification, but claims that James should have sought court approval, as he had in 1990, at each claimed triggering event for a reduction of future child support obligation.

[¶ 11.] We begin our analysis with SDCL 25–7–7.3 which provides:

Any past due support payments are not subject to modification by a court or administrative entity of this state, except those accruing in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given to the obligee, the obligor, and any other parties having an interest in such matter.

In *Vellinga v. Vellinga*, 442 N.W.2d 472, 474 (S.D.1989), we explained that this statute:

The express language of SDCL 25–7–7.3 divides past due support payments into two groups: 1) payments which accrue subsequent to the petitioning for modification, and 2) payments which accrue prior to the petitioning for modification. Pay-

---

1. This Court does not look favorably upon personal modifications of child support that have not received trial court approval. *Vander Woude*

*v. Vander Woude,* 501 N.W.2d 361, 364 (S.D. 1993).

ments which accrue while a petition for modification is pending may be modified, but only from the date that notice of hearing has been given to the obligee and any other interested parties. Payments which accrued prior to the filing of a petition to modify may not be modified.

The legislature's intent to prohibit modification in all but very limited circumstances plainly appears on the face of the statute. A narrow window is provided for modification of past due payments which accrue after notice of hearing is given to the obligee. *Any* other past due support payments are not subject to modification. The use of the term *any,* understood in its ordinary sense, clearly encompasses both past due support payments which accrued after the effective date of the statute and those which accrued prior to July 1, 1987. Consequently, the trial court only had the authority to modify the child support from August 29, 1996, forward and erred by retroactively modifying it from July 1994.

[¶ 12.] James contends, however, that the 1993 stipulation provided for an automatic reduction in child support and that the trial court merely calculated this reduction. We have on two occasions interpreted language similar to that in the 1993 stipulation adopted by the trial court.

[¶ 13.] The Radigan family had two children. *Radigan v. Radigan,* 465 N.W.2d 483 (S.D.1991). Under the terms of their divorce decree, William was ordered to pay $750 in child support "until both children reach the age of majority or until further Order of the Court." This Court noted that:

The court may not impose on William a duty to support his children beyond the age of eighteen, or nineteen if they are still in high school. SDCL 25-5-18.1; *Birchfield v. Birchfield,* 417 N.W.2d 891, 895 (S.D.1988). William argues that "in effect" the court ordered him to pay child support for his son up to the age of twenty-two because the amount of child support continues undiminished until daughter reaches eighteen. *However, the judgment does not*

*allocate child support between son and daughter.* The judgment simply awards $750 per month for the support of the minor children, and thus there is no violation of SDCL 25-5-18.1.

465 N.W.2d at 485 (emphasis added). This Court held that William's remedy was to seek modification at the time the older child reached the age of majority.

[¶ 14.] In *Houser v. Houser,* 535 N.W.2d 882 (S.D.1995) father prorated his child support and reduced it accordingly when each child reached the age of majority. The decree, however, provided that child support shall be $400 per child "for and on behalf of the minor children" and continue until "said children shall attain the age of majority or until further order of the Court." This Court interpreted the decree:

It makes no provision for a pro rata distribution of the obligation. We hold that child support under the Decree was to remain at $400.00 until "said *children* attain the age of majority[.]" (Emphasis added). Because the 1984 Decree provided $400.00 per month in child support, any deviation from this amount was a modification of the decree, not a mutual "interpretation" of the decree by the parties, as claimed by Bob.

535 N.W.2d at 884.

[¶ 15.] As in *Radigan* and *Houser,* the court approved stipulation regarding child support, by its terms, terminated only when all of the children turned 19 or graduated. There was no provision for a pro rata distribution of the obligation or an automatic reduction of support (consistent in amount with the guidelines) upon the occurrence of either event as each child attained it. James' remedy was to seek a modification when a child turned 19 or graduated. *Radigan,* 465 N.W.2d at 485; *Houser,* 535 N.W.2d at 884. He did not do so and under the terms of the decree, the full support continued to inure to the benefit of the remaining children [2].

[¶ 16.] While this Court has encouraged trial courts to enter specific findings on

---

2. Despite the dissent's assertion, James is not being forced to pay support to his children beyond the age of nineteen. Rather, the amount

that he agreed to pay for support now benefits the children who have not graduated from high school or reached the age of nineteen.

the interpretation of decrees, *Houser*, 535 N.W.2d at 884, it has also said that because the interpretation of a decree is a question of law, this Court gives no deference. *Id.* When James finally asked the court to modify the payments, the court considered Vera and James' incomes and the child support guidelines before reducing the payments. The court found and concluded that the order was "self-executing" to reduce child support upon each child's attainment of 19 or graduation. The terms of the order did not so provide, however, as there was no provision for the remaining child support as each child turned 19 or graduated. Additionally, the 1993 order was not "self-executing" because a self-executing order does not need intervening court action, Black's Law Dictionary 1360 (6th ed 1990), and the court considered current circumstances before rendering its decision.[3]

[¶ 17.] The trial court erred by retroactively decreasing James' child support obligation back to July 1994 since only payments which accrue while a petition for modification is pending may be modified and only from the date that notice of hearing on the petition has been given to interested parties. Notice in this case was given on August 27, 1996. Modification, if any, was only appropriate from that date forward. *Earley v. Earley*, 484 N.W.2d 125 (S.D.1992).

Attorney's Fees

[¶ 18.] Each party requested trial court attorney's fees. The trial court found that the parties were substantially in the same position and, accordingly, responsible for their own fees.

[¶ 19.] An award of attorney's fees lies within the sound discretion of the trial court. *Clarke v. Clarke*, 478 N.W.2d 834 (S.D.1991). The factors that a trial court should consider in awarding attorney's fees are "the parties relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case." *Fox v. Fox*, 467 N.W.2d 762, 768 (S.D.1991). The schedules attached to the findings of fact, conclusions of law, and order indicate that the trial court considered these factors.

In addition, the trial court had been dealing with these parties on a regular basis since 1985 and was very aware of their circumstances. There was no abuse of discretion in ordering that each was responsible for their own attorney's fees.

[¶ 20.] Vera filed a motion for an award of $1,817.90 in appellate attorney's fees. This motion is accompanied by an itemized statement of costs and legal services. *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). We deny the motion for the same reasons as expressed by the trial court.

[¶ 21.] The case is reversed and remanded for proceedings consistent with this opinion.

[¶ 22.] KONENKAMP, J., concurs.

[¶ 23.] GILBERTSON, J., concurs with writing.

[¶ 24.] MILLER, C.J., and AMUNDSON, J., dissent.

GILBERTSON, Justice (concurring).

[¶ 25.] What at first glance appears to be merely a case of alleged vague draftsmanship of a court order in reality requires a consideration of the nature of a parent's obligation to support their children as defined by our statutes. Before we reach the issue of whether the order was drafted to be self-executing, a more fundamental question must be addressed, that being whether the order could even legally be self-executing.

[¶ 26.] It is clear that in one instance support obligations automatically cease and thus are self-executing, that being where the only child receiving support reaches the age of eighteen or reaches the age of nineteen if he or she is a full-time student in a secondary school. SDCL 25-5-18.1. At that point, jurisdiction of the trial court to order additional support does not exist.

[¶ 27.] However, the issue now before us is in those instances where there is more than one child awarded support in the trial court's order of support. In *Vander Woude v. Vander Woude*, 501 N.W.2d 361, 363–64 (S.D. 1993), we interpreted SDCL 25-7A–17 to allow stipulations between parents relieving a

---

3. Additionally, I also agree with the reasoning in Justice Gilbertson's concurring opinion.

parent of a duty of support or responsibility for past, present, or future support on the conditions that: (1) it not infringe on any rights of the Department of Social Services, (2) it be in writing and (3) "the agreement has been approved by a court of competent jurisdiction."

[¶ 28.] In 1987 the Legislature may have limited the authority of a trial court to approve an agreement to reduce past due child support by the enactment of SDCL 25–7–7.3 which states:

Any past due support payments are not subject to modification by a court or administrative entity of this state, except those accruing in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given to the obligee, the obligor, and any other parties having an interest in such matter.

(Emphasis added). *Vander Woude* seems to suggest that SDCL 25–7A–17 is not limited by the requirements of SDCL 25–7–7.3.[4] Whether the parties can by stipulation agree to reduce past support in light of SDCL 25–7–7.3 need not be answered to adjudicate this case as there is no such agreement in existence. However, in either case it does show the limited nature of the extent to which reductions in past child support may be considered under SDCL 25–7A–17.

[¶ 29.] The trial court in this case deemed its prior order of support to be self-executing. However, that does not comport with the dictates of the applicable statutes. Based on a 1992 order of the trial court, the parties stipulated in February of 1993 that James would pay Vera $469 per month in child support commencing back to the date of the 1992 court order. That stipulation also contained the now disputed language that this obligation was to continue "until the minor children reach of age of nineteen (19) or graduate from high school, whichever occurs first." The trial court approved this stipulation on February 23, 1993.

[¶ 30.] Contrary to the view of the trial court, under the statutes this agreement cannot be self-executing. The child support tables found in SDCL 25–7–6.2 do not contain a pro rata reduction when a child reaches the age of majority. For example, if the parents have a combined income of $1,450 the child support tables (as they existed in 1993) are as follows:

| One Child | Two Children | Three Children | Four Children | Five Children | Six or more |
|---|---|---|---|---|---|
| 257 | 384 | 437 | 471 | 494 | 519 |

Thus, James self-help attempt at child support reduction on a pro rata basis violates the child support guidelines. The only way a pro rata reduction could be accomplished is to have the trial court make specific findings that such a deviation from the guidelines is appropriate pursuant to SDCL 25–7–6.10 which was not done in this case.

[¶ 31.] As the children either reached nineteen or graduated from high school, all other variables were not frozen in time. For the trial court to re-calculate James child support, at a minimum it needed the current income of James and Vera on the date the child was no longer entitled to support. Also, both parents had the opportunity at that time to request a deviation based on their current circumstances. SDCL 25–7–6.10. As such the agreement could not be self-executing.

[¶ 32.] The legality of the self-execution issue aside, I cannot agree with the trial court that the language of the order invoked self-execution. To me "the minor children" means *all* "the minor children" because *all* "the minor children" are subject to the child

---

4. However, compare with the language in *Vellinga v. Vellinga*, 442 N.W.2d 472, 474 (S.D.1989), interpreting the scope of SDCL 25–7–7.3:

The legislature's intent to prohibit modification in all but very limited circumstances plainly appears on the face of the statute. A narrow window is provided for modification of past due payments which accrue after notice of hearing is given to the obligee. *Any* other past due support payments are not subject to modification. The use of the term *any*, understood in its ordinary sense, clearly encompasses both past due support payment which accrued after the effective date of the statute and those which accrued prior to July 1, 1987.

(Emphasis original).

support laws of this state and the language of the stipulation and subsequent implementing order in no way attempts to limit this by designating "some of the children" or a specific number indicating less than all four children such as one, two, or three of them.

[¶ 33.] Factually, in 1994 James sought an informal reduction in this child support from Vera because two of the children were no longer entitled to support under our statutes. Vera correctly pointed out to James at that time this could not be accomplished without a hearing to re-calculate their current incomes. We have held in *Americana Healthcare Center v. Randall,* 513 N.W.2d 566 (S.D.1994), that a statute requiring financial support of an adult family member (a parent) is constitutional. Thus, any right of James to be relieved of child support is statutory only. While the trial court had no jurisdiction to require continued child support beyond that contained in the statute, since there was more than one child, James had the initial obligation of protecting his rights by petitioning the trial court for a determination of the child support due on the balance of the minor children.[5] As he did not do this, (1) based on the requirements of SDCL 25-7-7.3 and (2) the language to which he agreed in the 1993 support decree, his argument cannot be upheld under either point. As such, I would reverse the trial court and join with the majority opinion.

MILLER, Chief Justice (dissenting),

[¶ 34.] For the reasons set forth below, I would affirm the decision of the trial court. Therefore, I respectfully dissent.

[¶ 35.] First, the majority once again misinterprets our holding in *Radigan. See Houser,* 535 N.W.2d at 886–87 (Miller, C.J., dissenting). In *Radigan,* the decree specifically ordered that the father pay $750 per month in child support "until *both* children reach the age of majority or until further Order of the Court." 465 N.W.2d at 485 (emphasis added) (internal quotations omitted). In contrast,

the parties in the present case stipulated, and the trial court ordered that:

James O'Grady will pay Vera O'Grady the sum of $469.00 per month, as and for child support, said payments to commence on January 1, 1993, and payable on the 1st day of each and every month thereafter until the minor children reach the age of nineteen (19) or graduate from high school, whichever occurs first[.]

[¶ 36.] In this case, as in *Houser,* a critical distinction can be made from the decree we considered in *Radigan.* The present order does not state that payments will continue until "both" or "all" the children reach the age of majority. Thus, despite what the majority states, it is unclear whether or not the order intended for support to continue until all the children reached the age of majority. We must therefore look at the circumstances surrounding the order. *Houser,* 535 N.W.2d at 887 (Miller, C.J., dissenting) (citing *Malcolm v. Malcolm,* 365 N.W.2d 863, 865 (S.D.1985)).

[¶ 37.] It is important to note that the parties have, from the very beginning, considered child support to be dependent on the number of minor children. At the time of their divorce, James and Vera stipulated that James would pay "One Hundred Dollars ($100) *per child per month during the children's minority* as child support." (Emphasis added.) In 1990, when the trial court later modified the child support obligation from $400 to $280 based on the child support guidelines found in SDCL 25-7, the court specifically stated: "[T]his order shall amend and modify only the *amount* of the current child support obligation ... and shall not modify, amend or otherwise affect any other provision or any other prior Judgment or Order entered by the Court or any other administrative agency in this case." (Emphasis added.)

[¶ 38.] In 1992, when Vera made a motion to modify child support, seeking $633 per month, she moved that the divorce decree should be amended to order James to "pay child support for *each child until he/she*

---

**5.** This should cause no undue hardship. Where both parties agree to the amount of their current incomes by stipulation they can calculate the amount of child support due the remaining mi-

nor children. The stipulation then becomes the basis for the amended order of support by the trial court.

reaches the age of 18 or graduates from high school, whichever is last." (Emphasis added.) The only difference between this proposed order by Vera and the original requirement was now she wished to have James pay support for a child until that child finished high school, rather than stopping payment when a child reached the age of majority. The trial court subsequently modified the child support so James would pay $469 per month, but did nothing to change the original agreement in the divorce decree as to when payments would stop.

[¶ 39.] Then in 1993, the parties entered into the stipulation which is the subject of this case. The entire stipulation was in lieu of a trial on several issues including alimony arrears, payment of child support arrears, and child custody. The stipulation covered these areas, and also restated that James would pay $469 per month in child support, but then added the language "until the minor children reach the age of nineteen (19) or graduate from high school[.]"

[¶ 40.] From the outset the parties understood that child support was to be paid based on the number of minor children. Nothing ever changed that. While the child support guidelines were used to modify the amount of child support that was to be paid, such modifications did not affect the original agreement between the parties that support payments were to be paid "per child." See Evans v. Evans, 1997 SD 16, ¶ 14, 559 N.W.2d 240, 243 (holding that "SDCL 25–7–6.2 provides guidelines that trial courts must follow in setting child support amounts.") (Emphasis added.) The schedule set up for child support obligations, found at SDCL 25–7–6.2, bases the amount owed on the number of minor children in the family. The guidelines were followed in this case, as James was ordered to pay $469 per month in support based on his income and the fact that there were four minor children at the time the stipulation was entered. The trial court had the authority to modify the amount owed to support those four children, but it did not have the authority to use the guidelines to change the agreement of the parties that the support payments were to be reduced as each child reached the age of majority.

[¶ 41.] Further support for the proposition that the parties have always understood child support was to be paid "per child" and not as one lump sum can be seen from the conduct of the parties after the 1993 stipulation was entered. After the order in question was in effect, and two of the children were no longer minors, for some time James prorated the original amount so that he was only paying support for the remaining minor children. Vera also apparently accepted this reduced amount without questioning the practice or seeking an enforcement order.

[¶ 42.] Second, it is also significant to this case that the trial court held the current support order was self-executing and, therefore, held that the amount owed should be reduced as each child reached the age of eighteen. The majority states that "because the interpretation of a decree is a question of law, this Court gives no deference." ¶ 16 (citing Houser, 535 N.W.2d at 884). While this may generally be true, I disagree as to the present situation. Here, the trial court was interpreting a decree that it had originally ordered. Surely some deference must be given to the trial court in interpreting its own order. See Sec. and Exch. Comm'n v. Sloan, 535 F.2d 679, 681 (2d Cir.1976), cert. denied, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977) (holding: "We see no basis for substituting our judgment for that of the district judge in interpreting his own order."). While interpretation of a decree is normally a question of law for which we need not give deference to the trial court, how can such a standard of review be applied when the trial court was interpreting its own order? Clearly the trial court was in the best position to know what it originally meant. We should give deference, especially when the language is not clear.

[¶ 43.] Third, and of great significance, is that what the majority is requiring the trial court to do on remand is simply beyond that court's authority. SDCL 25–5–18.1 provides, in relevant part: "The parents of any child are under a legal duty to support their child ... until the child attains the age of eighteen, or until the child attains the age of nineteen if he is a full-time student in a secondary school." We have specifically held that this "statute simply does not provide the trial court with the authority or discretion to extend the application of the statute beyond

the age of nineteen." *Birchfield v. Birchfield*, 417 N.W.2d 891, 895 (S.D.1988). We further held in *Birchfield* that "where the parties do not otherwise agree ... the trial court may not impose a duty to support beyond nineteen." *Id.* (citing *Warne v. Warne*, 360 N.W.2d 510 (S.D.1984); *Jameson v. Jameson*, 306 N.W.2d 240 (S.D.1981)).

[¶ 44.] Therefore, and in summary, it is apparent the trial court did not have the authority to require James to support his children beyond the age of nineteen. The majority, in ordering the trial court to force James to pay support to his children beyond the age of nineteen is, in essence, requiring the trial court to act beyond its jurisdiction. Further, James, the trial court, and arguably Vera, understood the original order to be self-executing and that it provided for a pro rata reduction as each child reached the age of majority. Also, it is significant that the original order was entered by this same trial court. Lastly, the majority in this case distorts our holding in *Radigan* even more than was done in *Houser*. The language in the child support order is not clear and we are in no position to second guess the trial court in interpreting its own order.

[¶ 45.] I am authorized to state that Justice AMUNDSON joins in this dissent.