*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT LANKTON,

        Plaintiff-Appellant,

v

ORCHID ORTHOPEDIC SOLUTIONS, LLC,

        Defendant-Appellee.

UNPUBLISHED
June 17, 2026
11:13 AM

No. 375510
Ingham Circuit Court
LC No. 24-000422-CD

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10). Plaintiff contends that there are genuine issues of material fact regarding whether defendant violated the antiretaliation provisions of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, when it terminated his employment. We vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant manufactures medical devices. It employed plaintiff, who injured his shoulder while at work on April 21, 2022. Plaintiff filed a worker's compensation claim for his injury on the same day and notified his supervisor the day after. About one year after his injury, plaintiff went to the emergency room because of pain he believed to be associated with the injury, and a physician eventually informed him that he had likely torn his rotator cuff. Plaintiff's physician gave him a work restriction for his injury, and plaintiff continued working subject to that restriction.

On April 22, 2023, defendant disciplined plaintiff for an April 14, 2023 incident described as "falsifying documentation"[1] and placed him on "final warning" status. According to

---

[1] Plaintiff's personnel file describes that "[plaintiff] wrote down that the mismatch passed without actually checking the mismatch," resulting in certain parts being "out of spec" and scrapped.

-1-

defendant's Human Resources (HR) manager, placing an employee on final-warning status means that "if they make the same GDP[2] violation or quality violation they're immediately terminated." Plaintiff discussed the issue with his supervisor but not with HR.

On August 6, 2023, defendant placed plaintiff on medical leave because there was not enough work to assign to him while he was medically restricted. Plaintiff returned to work on September 27, 2023 because defendant had found work within the company that was suitable for his work restriction. However, plaintiff texted defendant's HR manager on October 10, 2023 to inform HR that plaintiff's treating physician was recommending surgery, and plaintiff texted again on October 18, 2023 to inform HR that his surgery was scheduled for October 30, 2023. For a period of time after his surgery, plaintiff received worker's compensation benefits.

On October 23 and October 30, 2023, a regularly occurring audit process revealed that plaintiff had committed four documentation errors, one on October 12, 2023, another on October 16, and two on October 18. These errors were reported to plaintiff's supervisor, who discussed two of them with plaintiff. Defendant's manager of forging operations then told the HR manager about plaintiff's errors on October 30 and provided additional documentation about the errors on October 31. The HR manager testified that she believed that the manager of forging operations was aware of plaintiff's worker's compensation injury at the time of this reporting. These conversations included an October 30 text in which the HR manager informed the manager of forging operations, "[Plaintiff] had to have the repair so he is off for 4 weeks." According to the HR manager, after reviewing the documentation that the forging operations manager provided on October 31, she decided to inform her supervisor (the chief HR officer) and the Director of Operations "[b]ecause this was a sensitive situation with [plaintiff] having gone out on leave."[3] A few days later, on either November 2 or 3, 2023, the HR manager spoke with plaintiff on the phone and specifically discussed the two errors that plaintiff's supervisor had already discussed with him, while also mentioning that they have found a couple more errors, but that he was not being terminated at that time.

On November 6, 2023, the HR manager informed plaintiff that his employment had been terminated. Defendant filed a corrective action form in plaintiff's personnel file, which described

---

[2] Defendant's "Good Documentation Practices" (GDP) handbook is a quality-policy manual that establishes defendant's expectations for paperwork procedures. The GDP ensures compliance with defendant's "Good Manufacturing Practices," which "are the practices required to conform to guidelines recommended by agencies that control the authorization and licensing of the manufacture and sale of Medical Devices." The GDP specifies that "intentional pre-populating," meaning entering inspection results before performing the work, is considered "falsifying documentation," which may result in "disciplinary action."

[3] We do not mean to suggest, as our dissenting colleague infers, that the forging operations manager was the decision-maker with regard to plaintiff's termination. We instead merely observe that the human resources manager did not escalate the matter to her superiors until after her communications with the forging operations manager about plaintiff's scheduled surgery.

the documentation error on October 12 and one of the two documentation errors on October 18,[4] stating, "This is failure to comply with our good documentation practices procedure and has led to your termination of employment." Plaintiff sent an e-mail to defendant's chief HR officer the day after he was informed that his employment had been terminated. Plaintiff asserted that defendant had discriminated against him, and he asked for copies of the documents that formed the basis for his dismissal. The chief HR officer responded on November 14 and reiterated that the two documentation errors on October 12 and October 18 were the reason for his termination.

On May 31, 2024, plaintiff filed an action against defendant asserting a retaliatory discharge claim under the WDCA. Defendant moved for summary disposition under MCR 2.116(C)(10) on the basis that plaintiff could not demonstrate a causal relationship between his worker's compensation claim and his dismissal and could not rebut its legitimate business justification for the termination. The trial court agreed and concluded that "there was clear evidence that the reason for the termination in this case was because of the failure to follow the very strict rules that were in place." The trial court found no evidence that defendant's proffered legitimate reason for firing plaintiff was pretextual. This appeal followed.

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court improperly granted defendant's motion for summary disposition under MCR 2.116(C)(10) because the evidence in the record was sufficient to establish genuine issues of material fact as to whether plaintiff's discharge was caused by his decision to seek worker's compensation benefits and whether the proffered reasons for discharge were pretextual. We agree.

### A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Bonner v City of Brighton*, 495 Mich 209, 220; 848 NW2d 380 (2014). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When reviewing a motion brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties . . . in the light most favorable to the party opposing the motion." *Yang v Everest Nat'l Ins Co*, 507 Mich 314, 320; 968 NW2d 390 (2021) (quotation marks and citation omitted; ellipses in original). "[W]hen an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves

---

[4] These errors violated provisions of the GDP, but not the subsections for "intentional pre-populating" or "intentional post-recording," which are the only two violations that the GDP classified as "falsifying documentation" and for which it explicitly stated that the employee "may be subject to disciplinary action." But the HR manager testified that an employee may be disciplined for any GDP violation.

open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich 160. "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition. A court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted).

## B. ANALYSIS

"The primary goal of the WDCA is to promptly deliver benefits to employees injured in the scope of their employment." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 272; 826 NW2d 519 (2012) (quotation marks and citation omitted). The Act provides a cause of action for retaliatory discharge:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act. [MCL 418.301(13).]

A prima facie case of retaliation under MCL 418.301(13) consists of four elements:

> (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under [the WDCA] were causally connected. [*Cuddington*, 298 Mich App at 275.]

The plaintiff bears the burden of establishing the causal connection. *Chiles v Machine Shop, Inc*, 238 Mich App 462, 470; 606 NW2d 398 (1999). "Plaintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). "In the retaliation context, direct evidence of retaliation establishes without resort to an inference that an employer's decision to take an adverse employment action was at least in part retaliatory." *Cuddington*, 298 Mich App at 276. Direct evidence is rarely available. See *id*.

But indirect evidence can also form the basis of a prima facie claim of retaliation. *Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW2d 634 (2013). If a plaintiff's prima facie claim is based on circumstantial evidence, then under the *McDonnell Douglas/Burdine*[5] burden-shifting framework, "the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for its adverse employment action." *Cuddington*, 298 Mich App at 276-277. Defendant "may be entitled to summary disposition if it offers a legitimate reason for its action and the plaintiff fails

---

[5] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973); *Texas Dep't of Community Affairs v Burdine*, 450 US 248; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a motivating factor for the employer's adverse action." *Debano-Griffin*, 493 Mich at 176 (quotation marks and citation omitted). However, "[a] plaintiff can establish that the employer's proffered reasons for the adverse employment action qualify as pretextual by demonstrating that the reasons (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision." *Cuddington*, 298 Mich App at 277.

## 1. PRIMA FACIE CASE

The first issue is whether plaintiff established a rebuttable prima facie case of retaliation. Standing alone, a temporal connection between the protected activity and adverse employment action is insufficient to demonstrate a causal connection and cannot support a prima facie case of retaliation. *West*, 469 Mich at 186. But the plaintiff may create a genuine issue of material fact regarding the causation requirement if he presents evidence that "shows more than a coincidence in time." *Debano-Griffin*, 493 Mich at 177 (quotation marks and citation omitted).

In this case, defendant presented sufficient evidence from which a rational jury could find causation rather than coincidence. Plaintiff informed defendant's HR manager on October 18 that his surgery was scheduled for October 30. Testimony from plaintiff and management indicated that operators like plaintiff often go over audit results with their direct supervisors without intervention from upper management or human resources. The record suggests that this informal process occurred sometime between October 23 and October 30. There was a gap in time between when auditors and the forging operations manager became aware of plaintiff's errors and when management was notified of them.

The forging operations manager stated that he was compelled to escalate the issue and alert the upper management because plaintiff was on final-warning status from his previous documentation error in April 2023, but he provided no explanation for why escalation did not occur between October 23 and October 30. Instead, there is evidence that the HR manager texted the forging operations manager on October 30 about plaintiff's surgery, and the matter was escalated on October 31, the day after plaintiff's surgery. The HR manager then informed plaintiff on November 6 that his employment was terminated. Plaintiff's employment was terminated after he exercised his right to obtain a necessary medical service (surgery), and the evidence suggests that the timing could be more than just a coincidence. Defendant was aware of allegedly legitimate grounds for dismissal before plaintiff's surgery, but it did not take any adverse employment action until *after* the HR manager advised the forging operations manager that plaintiff was having surgery and would be off work for four weeks. Taken in the light most favorable to plaintiff as the nonmoving party, a reasonable trier of fact could conclude that plaintiff's worker's compensation claim was a motivating factor for defendant's actions because defendant expressed no intent to terminate plaintiff's employment or otherwise escalate its disciplinary measures until after the HR manager specifically mentioned the surgery and medical leave. See *id*. at 178 ("[I]t

is reasonable to infer that the more knowledge the employer has of the plaintiff's protected activity, the greater the possibility of an impermissible motivation.").[6]

## 2. PRETEXT

Once a plaintiff has established a prima facie case of retaliation, the employer may rebut the case by offering a legitimate reason for its action, and the plaintiff must then show that the allegedly legitimate reason was a pretext for an unlawful motivation. *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 17-18; 891 NW2d 528 (2016). Under this framework, there are three ways to establish pretext:

> A plaintiff can establish that a defendant's articulated legitimate . . . reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 707 (1998).]

A plaintiff can also establish pretext by showing that he was treated differently from similarly situated employees. *Lytle v Malady*, 458 Mich 153, 178; 579 NW2d 906 (1998). But "[t]he soundness of an employer's business judgment . . . may not be questioned as a means of showing pretext." *Dubey v Stroh Brewery Co*, 185 Mich App 561, 566; 462 NW2d 758 (1990).[7]

In this case, plaintiff's dismissal report flagged two errors as the grounds for his dismissal: one error on October 12 and another error on October 18. Defendant stated that these errors were the legitimate reason that it terminated plaintiff's employment. Plaintiff specified that the HR manager discussed those two documentation errors with him during their phone call on November 2 or 3, although she also mentioned that "there was a couple more they found." When the HR manager called him on November 6, she told him that he was being terminated because of four documentation errors. The forging operations manager's declaration also stated that plaintiff made four errors on October 12, October 16, and October 18, and that those errors were submitted to

---

[6] Although our dissenting colleague notes that the human resources manager did not terminate plaintiff immediately upon learning of plaintiff's scheduled surgery, the law also protects plaintiff's later exercise of his right to obtain medical services under circumstances that would cause him to be off work for four weeks.

[7] Although we share our dissenting colleague's frustrations with the *McDonnell Douglas* framework, we respectfully part company with regard to the "similarly situated" prong of the analysis. A plaintiff is not required, as the dissent suggests, to identify similarly situated employees who were treated differently. Our Supreme Court has rejected the notion that a plaintiff is limited to the "similarly situated" method, stating "there remain multiple ways of proving the ultimate question of discrimination in a circumstantial evidence case." *Hecht v National Heritage Academies, Inc*, 499 Mich 586, 607; 886 NW2d 135 (2016).

plaintiff's direct supervisor and management on October 31.[8] A follow-up e-mail response from defendant's chief HR officer restated that two documentation errors on October 12 and October 18 were the basis for plaintiff's termination. Taking this evidence in the light most favorable to plaintiff, there is a genuine issue of material fact as to what errors defendant actually relied on as the basis for termination on November 6, 2023, and a reasonable juror could conclude that this discrepancy supports that the errors did not motivate plaintiff's termination.[9]

Defendant further contends that plaintiff's employment was terminated in part because he was on final-warning status from April 2023. But there is a genuine issue of material fact regarding whether plaintiff's discipline in April 2023 for intentionally falsifying documentation was actually similar to the possibly inadvertent documentation errors in October 2023. The record contains contradictory evidence regarding whether the intentional falsification of data and the general omission of data were treated as substantively similar in defendant's workplace. Plaintiff testified that general errors were often informally corrected, and there was no evidence that defendant had terminated another worker's employment for general errors. A reasonable trier of fact could infer from the current record that defendant did not actually treat such errors as serious enough to warrant formal disciplinary actions or dismissal.[10] Accordingly, a rational trier of fact could infer

---

[8] The declaration was attached to defendant's brief in support of its motion for summary disposition. If defendant sought to offer this document at trial, then it would likely be inadmissible hearsay. See MRE 801(c); MRE 802. See also *Outside Legal Counsel, PLC v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW3d ___ (Docket No. 374178) (2025); slip op at 4 (noting that 28 USC 1746, which allows the admission of an unsworn affidavit that is subscribed by the declarant as true under penalty of perjury, "only applies to federal proceedings"). When ruling on defendant's motion, "the trial court could only consider substantively admissible evidence," but that evidence only had to be admissible in *content*, not in form. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). See also MCR 2.116(G)(6). Plaintiff had already listed the forging operations manager as a potential witness, so the trial court could have reasonably expected that the manager would be available at trial to directly testify concerning the substance of his declaration. Therefore, the trial court (and this Court on de novo review) may consider the declaration when ruling on the motion for summary disposition.

[9] Our dissenting colleague finds the precise errors motivating defendant's termination decision to be a "distinction without a difference." We would agree if it were clear from the record that being on "final warning status" meant that any subsequent GDP violation would be grounds for termination, as opposed to termination resulting only if the same type of GDP violation, i.e., "falsifying documentation," occurred. There are genuine issues of material fact in that regard that preclude summary disposition on the current record.

[10] For this reason, we respectfully disagree with our dissenting colleague's suggestion that the circumstances of other employees' terminations are "beside the point." Genuine issues of material fact remain with regard to how defendant addressed different types of GDP violations when an employee was under (or not under) "final warning status."

that plaintiff's October 2023 errors were not the actual motivation behind plaintiff's dismissal, or at least that those errors were insufficient to justify the termination decision.

### III. CONCLUSION

The record available to the trial court was sufficient to establish a genuine issue of material fact regarding whether defendant terminated plaintiff's employment as a retaliation for exercising his right to obtain necessary medical services under the WDCA. Therefore, the trial court erred when it granted defendant's motion for summary disposition under MCR 2.116(C)(10).

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra